Christine **HARRIMAN**

v.

**COMMISSIONER, DEPARTMENT OF HUMAN SERVICES.**

Supreme Judicial Court of Maine.

Argued April 30, 1991.

Decided Aug. 12, 1991.

Jack Comart (orally), Pine Tree Legal Assistance, Inc., Augusta, for appellant.

James E. Mitchell, Jim Mitchell and Jed Davis, P.A., Augusta, amicus curiae.

Marina E. Thibeau (orally), Sue A. Jerome, Asst. Attys. Gen., Augusta, for appellee.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

McKUSICK, Chief Justice.

To respond to a question of state law certified to us by the United States District Court for the District of Maine (*Hornby, J.*), we here consider whether the Maine Department of Human Services (DHS) is correctly administering the Maine Medicaid

statute, 22 M.R.S.A. §§ 3172–3191 (1980 & Pamph.1990). Specifically, we are asked whether DHS is correct in construing the statute not to mandate Medicaid benefits for a claimant whose assets exceed the eligibility limit for Medicaid even though the claimant has incurred medical expenses that would reduce those assets below that limit. We conclude that the DHS interpretation is correct: The Maine statute does not require DHS to treat the claimant's assets as being spent down as the medical expenses are incurred; the statute does not mandate a so-called asset spend-down.

The certified question arises in a class action brought by Christine Harriman on behalf of herself and all persons similarly situated. In January 1989 Harriman required emergency hospitalization. During her month-long stay she incurred uninsured expenses in excess of $42,000, for which she was billed in February 1989. At that time she and her husband had about $10,000 in liquid assets, but they did not apply those assets to paying her hospital bill until March 1989. On April 4, 1989, she applied for Medicaid coverage for her unpaid hospital bills incurred in January and February. While finding Harriman by then eligible for medical expenses she might incur in the future, DHS denied Medicaid for any part of the February hospital bill because at the time she incurred those expenses her assets exceeded the $3,000 asset eligibility limit for a couple set by DHS regulations.[1] *See* Maine Medicaid Eligibility Manual § 2240 (1989).

Harriman challenged the DHS determination before an administrative hearing officer. She contended that the Maine Medicaid statute made her eligible in January and February for Medicaid on her hospital expenses over and above $7,000; that the statute required DHS to treat her $10,000 of assets as being reduced or "spent down" to below the $3,000 eligibility maximum as soon as she had incurred more than $7,000 of hospital bills. In other words, she argued that the state statute mandated an asset spend-down that made

her eligible for Medicaid for the remaining $35,000 of her hospital expenses. After hearing, the administrative hearing officer rejected her contention and affirmed the DHS determination of past ineligibility.

Harriman then filed a class action in the Superior Court (Kennebec County) alleging that DHS had violated both the Maine and the federal Medicaid statutes, as well as the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983 (1981). DHS removed the suit to the federal district court. Harriman moved for summary judgment on all except the equal protection claim. Denying her motion as to the federal claims, the court held that the federal Medicaid statute did not require Maine to have an asset spend-down rule. In order to determine whether the Maine Medicaid statute, even without any federal mandate, requires DHS to apply an asset spend-down rule, the federal court certified the following question of state law to the Maine Law Court:

> Does 22 M.R.S.A. § 3174 require the Department of Human Services to find that an applicant for Medicaid benefits is eligible for Medicaid once he has incurred medical expenses equal to the amount of his excess countable resources, even though he has not yet spent his excess resources?

The federal Social Security Act establishes the framework for Medicaid programs to provide financial assistance with federal and state funds for low income families and for individuals who are disabled or over 65 years of age. Persons whose income and assets are so low that they could qualify for cash payments under either the Aid to Families with Dependent Children (AFDC) or the Supplemental Security Income (SSI) program are defined to be "categorically needy" for the purposes of receiving Medicaid. Federal law requires states to provide Medicaid benefits to the categorically needy. *See* 42 U.S.C. § 1396a(a)(10)(A)(i) (1985 & Supp.1990).

---

1. Harriman at no relevant time has had income that would make her ineligible for Medicaid benefits.

Beyond that, the federal Medicaid statute allows states to choose whether to provide assistance also to the "medically needy," those individuals who do not meet the financial eligibility requirements for AFDC or SSI but who nevertheless lack the financial ability to pay for necessary medical care. *See* 42 U.S.C. § 1936a(a)(10)(C). When the Maine legislature in 1974 first adopted a Medicaid program, it provided for only a basic program for the medically needy, without either an income or an asset spend-down provision:

> The department [DHS] is authorized to administer programs of ... medical ... care and services for medically indigent persons.

> The department is authorized and empowered to make all necessary rules and regulations, consistent with the laws of the State of Maine for the administration of these programs including, but not limited to, establishing conditions of eligibility.

P.L.1973, ch. 790, § 2, *codified at* 22 M.R.S.A. § 3173. This original Maine Medicaid statute authorized DHS to establish eligibility requirements for the basic Medicaid assistance program:

> The department [DHS], under rules and regulations established pursuant to section 3173, shall set forth conditions of eligibility for assistance under this chapter. Such conditions shall provide that aid may be granted only to any applicant who:

> > 1. **Income.** Has not sufficient income or other resources to provide a reasonable subsistence compatible with decency and health.

*See id.*, *codified at* 22 M.R.S.A. § 3174. Under this statute eligibility for Medicaid was determined solely by whether both the income and the assets of the applicant fell below prescribed limits, without any regard to the possibility that medical expenses

might be incurred that would pull the applicant's income and assets down below those allowable maximum limits. Counsel for DHS represent to the court that in Maine the limits prescribed by DHS have always been derived from federal regulations establishing income and asset limits for the SSI program. *See* 20 C.F.R. § 416.1205(c) (1991). Those asset limits are currently $2,000 for individuals and $3,000 for couples. *See id.;* Maine Medicaid Eligibility Manual § 2240.

■ In 1978 the legislature added an *income* spend-down provision to the Maine Medicaid statute. *See* P.L.1977, ch. 714, § 2 (effective July 6, 1978). That income spend-down was inserted in section 3173 in the following language:

> Any applicant for benefits under the medically needy program whose countable income exceeds the applicable state protected income level maximum shall be eligible for the program when his incurred medical expenses are found to exceed the difference between his countable income and the applicable state maximum.

22 M.R.S.A. § 3173 (Pamph.1990). The 1978 amendment of section 3173 contained, however, no provision for a comparable asset spend-down. At the same time, the Maine legislature left unchanged the prior overall eligibility limitations of section 3174 but added an introductory paragraph that stated that DHS must define medical neediness and eligibility for assistance in terms consistent with the definitions in the federal Medicaid statutes.[2] *See* P.L.1977, ch. 714, § 3; 22 M.R.S.A. § 3174.

Following the 1978 addition of the income spend-down provision, DHS formally interpreted the statute by promulgating regulations, which section 3173 expressly empowered it to adopt, "for the administration of [the Medicaid] programs including, but not limited to, establishing conditions

---

2. As the certifying federal district court in this case has held, the federal Medicaid statute requires statutes with medically needy assistance programs to have an income spend-down of the type defined in 22 M.R.S.A. § 3173. *See* 42 U.S.C. § 1396a(a)(17). The federal statute, however, only permits, and does not require, a state to use an asset spend-down, such as that for which Harriman argues. *See Hession v. Illinois Dept. of Pub. Aid,* 129 Ill.2d 535, 547, 136 Ill.Dec. 65, 71, 544 N.E.2d 751, 757 (1989); *Haley v. Commissioner of Pub. Welfare,* 394 Mass. 466, 474, 476 N.E.2d 572, 578 (1985).

of eligibility ... and defining the term 'medically indigent.' " Those regulations have never applied an asset spend-down in the medically needy program and DHS has consistently over the intervening years refused to apply any. Under DHS regulations, applicants must first establish their substantive eligibility on the basis of either age or disability. Then they must satisfy DHS of their financial eligibility determined by an evaluation of both their income and their assets. If the assets of applicants are below the $3,000 limit set by DHS for a couple or the $2,000 limit for an individual, they are eligible for assistance as soon as their medical bills exceed the difference between their actual income and the income limits for Medicaid eligibility, whether or not they have paid the bills. In other words, following the mandate of the 1978 amendment of section 3173, DHS treats the amount of income in excess of the Medicaid limits as being spent by the applicant on their medical expenses at the time incurred, thus reducing or "spending down" their income to below the eligibility limit. On the other hand, the Maine Medicaid statute, like its federal counterpart,[3] does not require any asset spend-down and the DHS regulations did not add any. If the assets of applicants exceed the specified dollar limit, they are ineligible for assistance under the medically needy program, regardless of the amount of their medical expenses. DHS treats the amount of their assets in excess of that Medicaid asset limit as being spent by the claimant on her medical bills only after and to the extent the excess assets have been actually expended.

■ The clear language of sections 3173 and 3174 supports the DHS position that the Maine statute does not mandate an asset spend-down in the medically needy program. We need look no further than those sections for the answer to the question certified to us. *See State v. Edward C.*, 531 A.2d 672, 673 (Me.1987). Harriman urges us to read the word "income" in the income spend-down provision of section 3173 expansively to embrace two separate concepts, "income" and "assets." We find unpersuasive Harriman's attempt to read the language of section 3174, "income or other resources [sufficient] to provide a reasonable subsistence," as a definition of "income" to be applied to the income spend-down provision of section 3173. On its face section 3174 is not a definitional section,[4] and, enacted as it was four years before the income spend-down provision, section 3174 could never have been intended to be a definitional section for the subsequently enacted provision. In fact, in 1974 in section 3174, the legislature made precisely the distinction between "income" and "other resources" (e.g., assets) that Harriman would now have us ignore. Far from signaling an intent to use the word "income" as a shorthand for both concepts as Harriman contends, the legislature made clear that it saw the two concepts as distinct.

■ This distinction is fully consistent with the ordinary, everyday meanings of the terms "income," "assets," and "resources." In the absence of a contrary statutory definition, it is the everyday usage of those words that must control their meanings within the statute. *See Paradis v. Webber Hosp.*, 409 A.2d 672, 675 (Me. 1979). "Resources" is the broadest of these concepts, including both "income" and "assets."[5] The legislature chose to use both the narrow term "income" and the

---

3. See n. 2 above.

4. 22 M.R.S.A. § 3172 (1980 & Pamph.1990) is the plainly labeled definitional section for the Medicaid statute, and not section 3174. Section 3172 does not prescribe any specialized definition, for purposes of the Medicaid statute, for "income," "resources," "assets," and a great many other terms of common usage.

5. *Webster's New International Dictionary*, 2d ed. (1961), provides the following contrasting definitions:

Resources: "Available means ...; computable wealth in money, property, products, etc." (*Id.* at 2122)

Income: "That gain or recurrent benefit (usually measured in money) which proceeds from labor, business, or property." (*Id.* at 1258)

Assets: "Any items of value owned." (Colloq., U.S.) "The entire property, of all sorts, ... of a person, ... applicable or subject to the payment of his ... debts." (*Id.* at 166)

all-inclusive term "resources" in that sentence within section 3174 limiting who may be eligible for Medicaid: "aid may be granted only to an applicant who ... has not sufficient income or other resources to provide a reasonable subsistence compatible with decency and health." The overall effect was to restrict as much as possible the number of eligible Medicaid recipients. From the start in 1974, DHS has respected this statutory limitation by imposing a prescribed asset maximum, as well as a separately defined income maximum. By contrast, in section 3173 where the legislature in 1978 expanded the scope of coverage by enacting a spend-down provision, it specifically used only the narrower term "income," thus minimizing the increase in benefits that the state would have to provide to comply with federal requirements.

That the legislature acted purposely in enacting only an income spend-down and not an asset spend-down as well is supported by the relationship between the federal and state Medicaid statutes. The Maine legislature enacted the state's income spend-down provision only after federal law had been changed to mandate that states providing a medically needy program as part of their Medicaid schemes also provide an income spend-down. The federal statute and the implementing federal regulations clearly distinguish between income, on the one hand, and other resources or assets, on the other. *Compare* 42 C.F.R. §§ 435.301(a)(1)(ii), .831(c) & (d) *with* 42 C.F.R. §§ 435.301(a)(2), .840–.841 (explaining the income and asset eligibility requirements in medically needy programs for Medicaid); *also compare* 20 C.F.R. § 416.-1102 *with* 20 C.F.R. § 416.1201 (distinction between income and resources in context of SSI program). The Maine legislature's adoption of the same discriminating terminology within its own income spend-down

provision is powerful evidence that it meant to follow the outlines of the federal framework—no more and no less. Accordingly, DHS was fully justified in promulgating regulations for the medically needy program that mirror only the requirements of their federal counterparts and that thus provide for an income, but do not provide for an asset, spend-down. *See* n. 2 above.

■ We do not read an ambiguity into the Maine Medicaid statute because of a supposed anomaly that the legislature in 1978 would enact an income spend-down but at the same time not enact an asset spend-down. First, even if it is an anomaly, it is one present in the law controlling the federal grant program that mandates only an income spend-down in those states choosing to provide a medically needy assistance program. Second, and in any event, the fact that the same rationale supporting the federal mandate of an income spend-down could well have led the Maine legislature voluntarily to adopt also an asset spend-down does not justify our doing what the legislature plainly chose not to do. Legislators are motivated by many considerations. For whatever reason—whether to achieve cost containment[6] or to comply only with the federal mandate or through simple oversight—the legislature stopped short of enacting an asset spend-down as well as an income spend-down. There is nothing ambiguous about that omission.[7]

In conclusion, we answer the certified question in the negative:

22 M.R.S.A. § 3174 does not require the Department of Human Services to find that an applicant for Medicaid benefits is eligible for Medicaid once he has incurred medical expenses equal to the amount of his excess countable assets,

---

6. Application of an asset spend-down will always increase the cost of the medically needy program.

7. Because we find no ambiguity in the language of sections 3173 and 3174, we have no occasion to consider the application here of the principle that courts owe deference to a longstanding interpretation of a statute by the public agency charged with administering the program cre-

ated by the statute. *See LeBlanc v. United Eng'rs & Constructors, Inc.,* 584 A.2d 675, 677 (Me.1991) (Workers' Compensation Commission); *York Mut. Ins. Co. v. Superintendent of Ins.,* 485 A.2d 239, 241 (Me.1984) (Superintendent of Insurance); *cf. Central Maine Power Co. v. Public Utilities Comm'n,* 455 A.2d 34, 44 (Me. 1983) (PUC interpretation of regulations).

when he has not yet spent those excess assets.

The clerk will transmit our answer to the United States District Court for the District of Maine.

All concurring.