1999 ME 167

**STATE of Maine**

v.

**Bradley J. RAY.**

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 14, 1999.

Decided Nov. 22, 1999.

R. Christopher Almy, Attorney General, C. Daniel Wood, Asst. Dist. Atty., Bangor, for State.

M. Michaela Murphy, Daviau, Jabar & Batten, Waterville, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

SAUFLEY, J.

[¶ 1] Bradley J. Ray appeals from a judgment of conviction following a jury-waived trial (Penobscot County, *Mead, J.*) for aggravated forgery, which arose out of his arrest for operating under the influence.[1] On appeal, Ray contends that the Superior Court erred as a matter of law when it found that Ray committed aggravated forgery as defined by 17–A M.R.S.A. § 702 (1983 & Supp.1998) by signing a false name on a Uniform Summons and Complaint. We affirm the judgment.

## I. BACKGROUND

[¶ 2] The parties stipulated to the following facts. On December 31, 1997, Ray was stopped for speeding by a Dexter police officer. Rather than giving his real name, Ray told the officer that he was "Kenneth Deschaine" of Waterville. The officer smelled alcohol on Ray's breath and administered field-sobriety tests, which Ray failed. Accordingly, Ray was arrested. Following a breath test, which disclosed a .09% blood alcohol level, the officer issued a Uniform Summons and Complaint using the information supplied by Ray (i.e., that his name was Kenneth Deschaine). The Complaint contained the date of arraignment on the charges. Ray falsely signed that document "Kenneth Deschaine," and the officer gave Ray a copy of the Complaint and released him. The Complaint was then filed in the Newport District Court Clerk's Office. When no one appeared for arraignment, an arrest warrant was issued for Deschaine. Subsequently, the original arresting officer discovered Ray's true identity, and the charge against Deschaine was dismissed. Ray was arrested and charged with operating under the influence, as well as other charges

---

1. Ray has an extensive history of criminal convictions and has frequently failed to appear. He was sentenced to three years on the aggravated forgery charge.

related to the original traffic stop, and with the new charge of aggravated forgery.

[¶ 3] Ray waived a jury trial on the aggravated forgery charge and pled guilty to all other charges. He stipulated to the facts relevant to the aggravated forgery charge and moved for a judgment of acquittal on that charge. Following argument from the parties, the court denied the motion for a judgment of acquittal and found Ray guilty of aggravated forgery. This appeal followed.

## II. DISCUSSION

[¶ 4] Ray contends that the trial court erred when it found that, by signing a false name to the Complaint, he had committed aggravated forgery under 17–A M.R.S.A. § 702. The State argues that the plain meaning of "endorse," undefined in the statute, includes the defendant's conduct.

[¶ 5] Pursuant to section 702,

[a] person is guilty of aggravated forgery if, with intent to defraud or deceive another person or government, he falsely makes, completes, endorses or alters a written instrument ... and the instrument is ... [a] public record or an instrument filed or required or authorized by law to be filed in or with a public office or public employee.

17–A M.R.S.A. § 702(1)(D). "Written instrument" is defined to "include[ ] any token, coin, stamp, seal, badge, trademark, credit card, absentee ballot application, absentee ballot envelope, or other evidence or symbol of value, right, privilege or identification, and any paper, document or other written instrument containing written or printed matter or its equivalent." 17–A M.R.S.A. § 701(4) (1983). The statute defines the terms "falsely alters," "falsely completes," and "falsely makes," see 17–A M.R.S.A. § 701(1)–(3) (1983), but does not explicitly define "falsely endorses."

2. We need not determine, therefore, whether the undisputed conduct at issue could alterna-

[¶ 6] Ray concedes that the Uniform Summons and Complaint is a "public record or an instrument required or authorized to be filed in or with a public office or public employee." 17–A M.R.S.A. § 702(1)(D). The State did not argue that Ray made, completed, or altered the Complaint when he gave the false identifying information and signed it under a false name.[2] Thus, the sole issue before the court was whether Ray "endorsed" the Complaint for purposes of section 702. The court concluded that Ray did falsely endorse a public record or instrument when he signed the Complaint with a false name.

[¶ 7] Because statutory construction presents an issue of law, we review the construction of the statute de novo. *See State v. Pelletier,* 673 A.2d 1327, 1330 (Me.1996). Undefined terms within a statute are given their everyday meaning, *see Harriman v. Commissioner, Dep't of Human Servs.,* 595 A.2d 1053, 1056 (Me.1991) (citing *Paradis v. Webber Hosp.,* 409 A.2d 672, 675 (Me.1979)), and that meaning must be "consistent with the overall statutory context and must be construed in the light of the subject matter, the purpose of the statute and the consequences of a particular interpretation," *Town of Madison v. Town of Norridgewock,* 544 A.2d 317, 319 (Me.1988) (citing *Town of Arundel v. Swain,* 374 A.2d 317, 320–21 (Me.1977)).

[¶ 8] "Endorse," in isolation, may have two distinct meanings. In one sense, "endorse" means to "agree with." No *signature* is required, however, under this common understanding of "endorse"—as in the public statement "I endorse Candidate X for president." *See* DAVID B. GURALNIK, ED., WEBSTER'S NEW WORLD DICTIONARY 462 (2d ed.1978) ("endorse," definition 3: "a) to give approval to; support; sanction [to *endorse* a candidate] b) to state, as in an advertisement, that one approves of (a product, service, etc.), often in return for a fee").

tively meet the statutory definition of "makes" or "completes."

[¶ 9] Here, however, "endorse" must mean something different. "Endorse," in this context and given the subject matter of the forgery statute, must be understood with reference to the everyday meaning of "endorse *by signature*," as in a check or note.[3] *See id.* ("endorse," definition 1: "to write on the back of (a document); specif., a) to sign (one's name) as payee on the back of (a check, money order, etc.) b) to make (a check, etc.) payable to another person by thus signing one's name and specifying the payee").

[¶ 10] Although a common use of the phrase "endorse" applies in the context of affixing a signature to a financial instrument, such as a check or a note, the Legislature explicitly included nonfinancial documents within the list of instruments whose false endorsement constitutes the crime of aggravated forgery. *See* 17–A M.R.S.A. § 702(1)(D). To restrict the meaning of endorsement to false signatures placed on only financial documents, *see* 17–A M.R.S.A. § 702(1)(A)–(B), as suggested by Ray would eviscerate the meaning of the word endorse in this context. The plain language of section 702 demonstrates that the Legislature intended the act of endorsing a document described at 17–A M.R.S.A. § 702(1)(D) to encompass the physical act of signing a Uniform Summons and Complaint. Had it intended to limit the conduct made criminal in that section to endorsements to financial documents alone, it could have done so.

[¶ 11] The defendant does not dispute, nor is there any question, that the Complaint he signed as Kenneth Deschaine is a "public record or an instrument filed or required or authorized by law to be filed in or with a public office or public employee" under 17–A M.R.S.A. § 702(1)(D). Nor is

there any dispute that Ray gave false information regarding his identity, including his name, date of birth, and address. When Ray then signed the public document with the false name previously placed on the document by the trooper at Ray's direction, he falsely "endorsed" the document; that is, he falsely signed a public record or instrument presented for his own signature.

[¶ 12] Notwithstanding Ray's argument to the contrary, this is precisely the kind of conduct the Legislature intended to prohibit when it made the false endorsement of a public instrument of this nature a serious crime. Ray acted with the intent to deceive the government, and he falsely signed a public record or instrument required to be filed with a public office. All of the elements of the crime of aggravated forgery are established by the stipulations of the parties.

[¶ 13] Finally, Ray argues that charging him with a Class B crime for his actions is so disproportionate to the act itself as to deprive him of due process. He points to the availability of an alternate charge, failure to give correct name, *see* 29–A M.R.S.A. § 105(4) (1996 & Supp. 1998), which is a Class E offense.[4] We disagree with his assessment of the serious nature of his act.

[¶ 14] When a defendant not only fails to identify himself to the officer but also affirmatively provides the name and identifying information of another individual and *signs* the document with that false name, the State acts within its discretion when it charges the more serious crime. "It is well established that a reasonable prosecutorial discretion in the enforcement of criminal laws is inherent in our criminal

---

3. Ray makes essentially the same argument, but would direct the Court to the definition of "indorsement" in Article 3 of the Uniform Commercial Code for guidance as to the meaning of "endorse." *See* 11 M.R.S.A. § 3–1204 (1995).

4. The statute provides:

A person is guilty of a Class E crime if a law enforcement officer has probable cause to believe the person violated or is violating this Title and the person fails or refuses upon request to give the person's correct name, address or date of birth to a law enforcement officer.
29–A M.R.S.A. § 105(4).

justice system ...." *State v. Heald,* 382 A.2d 290, 301 (Me.1978); *see also State v. Raymond,* 1999 ME 126, ¶ 9, 737 A.2d 554, 556.

[¶ 15] Ray's actions in providing a false name on the Uniform Summons and Complaint could have led to very serious consequences. The person whose name has been given falsely may be subject to a license suspension, detention, or even arrest. Conduct that places another person at such risk should not be treated lightly. Moreover, the defendant, by his actions, placed himself in a position to avoid responsibility for addressing the charges against him. These actions are not insignificant, and the court did not err in denying the defendant's motion to acquit.

The entry is:

Judgment affirmed.

