2002 ME 168

**JENKINS, INC.,**

v.

**WALSH BROTHERS, INC., et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: July 22, 2002.

Decided: Nov. 22, 2002.

David P. Ray, Esq., Mary DeLano, Bernstein, Shur, Sawyer & Nelson, P.A., Portland, ME, for plaintiff.

Robert W. Harrington, Esq., Law Offices of Robert W. Harrington, Boston, MA, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] Walsh Brothers, Inc., the general contractor for the construction of a new facility at the University of New England, and Aetna Casualty & Surety Co. appeal from a judgment entered on remand in the Superior Court (York County, *Brennan, J.*) awarding Jenkins, Inc., a drywall subcontractor, prompt payment remedies pursuant to 10 M.R.S.A. §§ 1111–1120 (1997 & Supp.2001). Walsh Brothers contends that the trial court erred as a matter of

law and as a matter of fact by imposing interest and penalties pursuant to sections 1114(4),[1] 1116(4),[2] and 1118(2)[3] and that the trial court erred as a matter of law by awarding Jenkins attorney fees pursuant to section 1118(4).[4] Aetna contends that the entry of judgment against it was erroneous because Jenkins waived its claim against Aetna and failed to prove the elements of the claim at trial. We affirm the award to Jenkins of interest, penalties, and attorney fees against Walsh Brothers pursuant to the prompt payment statute and vacate the judgment against Aetna.

## I. BACKGROUND

[¶ 2] The facts of this case are set forth in *Jenkins, Inc. v. Walsh Bros., Inc.,* 2001 ME 98, 776 A.2d 1229 (*"Jenkins I"*), in which we affirmed the judgment against Walsh Brothers in part and remanded for further findings pursuant to the prompt payment statute. *Id.* ¶¶ 29, 32, 776 A.2d at 1239–40. We stated that a subcontractor seeking penalties under the prompt pay-

ment statute must establish the following four elements:

(1)[T]he services were performed in accordance with the agreement or understanding of the parties; (2) the owner has made the progress or final payment; (3) the subcontractor has invoiced the work; and (4) the contractor failed to make payment within seven days after receipt of the invoice, or after receipt of the progress or final payment from the owner, whichever is later.

*Id.* ¶ 24, 776 A.2d at 1237. Applying these four elements to the court's findings, we determined that "[t]he court found that Walsh did not act in good faith and that Jenkins succeeded in meeting its burden on the first two elements." *Id.* ¶ 25, 776 A.2d at 1237. "Specifically, the court found that Jenkins had performed the work and that UNE had made a progress payment of $170,000 [to Walsh Brothers]." *Id.* We also determined, however, that the court had not made findings relative to the third and fourth elements.[5] *Id.* ¶ 26, 776

1. Addressing delayed payments to a subcontractor, section 1114(4) provides:

 Notwithstanding any contrary agreement, if any progress or final payment to a subcontractor or material supplier is delayed beyond the due date established in subsection 2 or 3, the contractor or subcontractor shall pay its subcontractor or material supplier interest on any unpaid balance due beginning on the next day, at an interest rate equal to that specified in Title 14, section 1602–A, subsection 2.

 10 M.R.S.A. § 1114(4) (1997).

2. This section provides that "[i]f a contractor or subcontractor unreasonably withholds acceptance of the work or materials or fails to pay retainage as required by this section, the owner, contractor or subcontractor is subject to the interest, penalty and attorney's fees provisions of this chapter." 10 M.R.S.A. § 1116(4) (1997).

3. This section provides that:

 If arbitration or litigation is commenced to recover payment due under the terms of this chapter and it is determined that an

owner, contractor or subcontractor has failed to comply with the payment terms of this chapter, the arbitrator or court shall award an amount equal to 1% per month of all sums for which payment has wrongfully been withheld, in addition to all other damages due and as a penalty.

 10 M.R.S.A. § 1118(2) (1997).

4. This subsection provides that "[n]otwithstanding any contrary agreement, the substantially prevailing party in any proceeding to recover any payment within the scope of this chapter must be awarded reasonable attorney's fees in an amount to be determined by the court or arbitrator, together with expenses." 10 M.R.S.A. § 1118(4) (1997).

5. In its original decision, the Superior Court found that "[a]s the project was wrapping up Walsh received payments from U.N.E. for drywall work of $170,000 and failed to make any payment to Jenkins." There was no finding made as to the date by which UNE made the payment to Walsh, other than it was received "[a]s the project was wrapping up . . . ."

A.2d at 1237–38. We therefore remanded the case for additional findings by the court to determine whether Jenkins met its burden of proof:

> Without a finding of the amounts due and the dates from which the penalties should run, the court could not award enhanced interest or a monthly penalty pursuant to sections 1114(4) and 1118(2). Therefore, we must vacate the court's imposition of prompt payment penalties and remand for further findings by the court to determine whether Jenkins met its burden of proof.

*Id.* ¶ 29, 776 A.2d at 1238–39.

[¶ 3] We also noted that there was a similar lack of factual findings with regard to Jenkins's claim for penalties and interest on the retainage pursuant to section 1116(4). *Id.* ¶ 27 n. 13, 776 A.2d at 1238. In addition, we vacated the award of attorney fees pursuant to section 1118(4) because we found that Jenkins had failed to prove its entitlement to penalties pursuant to the prompt payment statute. *Id.* ¶ 32, 776 A.2d at 1240. We instructed that "[i]f the court finds that Jenkins failed to establish a violation of the statute, Jenkins has not prevailed 'within the scope of [prompt payment statute],' and accordingly, the court may not award attorney fees." *Id.* ¶ 32, 776 A.2d at 1240.

[¶ 4] On remand, the court held a non-testimonial hearing and entered judgment for Jenkins and against Walsh Brothers and Aetna. The court adopted the proposed findings submitted by Jenkins and found that Walsh Brothers received the $170,000 payment for Jenkins's work no later than November 14, 1996. It also found that Walsh Brothers received a $31,472.82 payment for the retainage related to Jenkins's work no later than April 30, 1997. Based upon these findings, the court awarded interest, penalties, and attorney fees pursuant to the prompt payment statute. The court also entered judgment against Aetna with respect to the payment bond it had posted as security for Walsh Brothers's performance of the UNE construction project. Jenkins's claim against Aetna was not addressed in the court's original judgment, nor was the claim's omission from the original judgment raised as an issue on appeal in *Jenkins I*.

## II. DISCUSSION

### A. Prompt Payment Remedies

[¶ 5] Walsh Brothers asserts that there is no competent evidence to support the court's findings regarding the payments and the dates by which they were received. "Where there is competent evidence in the record to support the court's findings, we will not disturb the factual findings of the court." *Sorey v. Sorey*, 1998 ME 217, ¶ 14, 718 A.2d 568, 571. "When a trial court adopts verbatim the proposed findings of a party, we must scrutinize the findings closely to determine whether the court has adequately performed its judicial function." *Weeks v. Weeks*, 650 A.2d 945, 946 (Me.1994).

[¶ 6] The dates of the two payments are pivotal because the court must determine when the payments were received in order to identify the dates from which prompt payment remedies run. *See Jenkins*, 2001 ME 98, ¶ 24, 776 A.2d at 1237. Turning first to the date of the $170,000 payment, the court's finding that the payment was made no later than November 14, 1996, was based on Plaintiff's Exhibit 368, which is a summary of a construction progress meeting held on November 14, 1996, prepared by Ellenzweig Associates, Inc., the designer for the UNE project. Paragraph 13 of the summary states:

> *13. Jenkins, Inc.—Lien*
>
> UNE stated that they were issued a $400,000 lien on the building; Walsh

Bros. stated that this firm had been paid for their "work-in-place" (+/$170,000). The additional monies will be put in escrow.

This notation is susceptible to two interpretations. First, that Walsh Brothers's representative stated that Jenkins had been paid approximately $170,000 for its "work-in-place," and an unspecified amount of additional money would be placed in escrow. Second, that Walsh Brothers's representative stated that Jenkins had been paid for its "work-in-place," and an additional sum, plus or minus $170,000, would be placed in escrow. The court's judgment reflects that it adopted the second of these two interpretations of this exhibit. This interpretation was supported by the testimony of Walsh Brothers's employee Derek Manier, who was the project director on the UNE construction and Walsh Brothers's sole representative at the November 14 progress meeting. Manier acknowledged that the notation could be construed to mean that Walsh Brothers had received approximately $170,000 intended for Jenkins that had been placed in escrow, but he denied having made such a representation at the progress meeting.

[¶ 7] The meaning and weight to be given the exhibits and the testimony of the witnesses is for the fact-finder to determine and must be upheld unless clearly erroneous. *Crowley v. Dubuc,* 430 A.2d 549, 552 (Me.1981). The court was not bound to accept Manier's recollection of what he said at the construction progress meeting held several years prior to the trial. The court's interpretation of the exhibit was also consistent with the sepa-rate evidence it received regarding the total amount Jenkins had invoiced and the total amount Walsh Brothers had paid as of the November 14th meeting.[6] In addition, the court's construction of Plaintiff's Exhibit 368 was consistent with the final sentence of paragraph 13 of the exhibit regarding the placement of "additional money in escrow." There is no apparent reason for the participants to have discussed placing money in escrow unless Walsh Brothers had received a payment or payments from UNE on or before November 14th related to Jenkins's services that had not yet been paid to Jenkins.

[¶ 8] In keeping with section 1114(3), Walsh Brothers was required to make payment to Jenkins within seven days of the last invoice or within seven days of the payment to Walsh Brothers from UNE, whichever was later. 10 M.R.S.A. § 1114(3). Therefore, combining the court's finding of the $170,000 payment by November 14 with the finding that $167,416.79 had been invoiced as of September 26, the "later" date for purposes of establishing when the payment was due under section 1114(3) was November 21, seven days after November 14.

[¶ 9] With respect to the retainage, the court found on remand that Walsh Brothers received payment of $31,472.82 from UNE for the retainage no later than April 30, 1997. Consequently, Walsh Brothers was required to pay Jenkins the retainage within seven days, by May 7, 1997. The court's finding that UNE paid Walsh Brothers retainage in the amount of $31,472.82 no later than April 30, 1997, was based upon Plaintiff's Exhibit 408. The

6. The parties stipulated that the date of Jenkins's last regular invoice to Walsh Brothers was September 20, 1996. As of that date, the total amount invoiced by Jenkins exceeded the total of all payments by $198,889.60. The court separately found that $31,472.82 of the amount owed to Jenkins was for the retain-age. Therefore, the balance in unpaid contract invoices as of the November 14 meeting was $167,416.79, which is approximately the same amount as the payment the court determined Walsh Brothers had received from UNE, but had not paid to Jenkins as of that date.

exhibit is entitled "WALSH BROTHERS INCORPORATED REQUISITIONS" and summarizes requisitions submitted by Walsh Brothers to UNE. It reflects that Walsh Brothers submitted requisition number 18 to UNE in the amount of $77,414 for work completed during the period ending April 30, 1997. A notation accompanying requisition number 18 states: "DRYWALL retainage reduced to 0%."

[¶ 10] The court's findings reflect that it interpreted the notation in Plaintiff's Exhibit 408 that the "drywall retainage reduced to 0%" to mean that as of the date of the requisition, April 30, 1997, Walsh Brothers had been paid the amount of the retainage it had withheld from Jenkins. The court's interpretation of the exhibit is consistent with the separate evidence it received regarding the amounts Jenkins had invoiced and Walsh Brothers had paid as of the November 14 meeting. The court's finding that the retainage payment in the amount of $31,472.82 was received by Walsh Brothers no later than April 30, 1997, is therefore supported by competent evidence.

[¶ 11] Because we conclude that the court's finding regarding Walsh Brothers's receipt of $170,000 by November 14, 1996, is supported by competent evidence, a proper foundation existed for the imposition of enhanced interest and penalties pursuant to sections 1114(4) and 1118(2). *Id.* ¶ 29, 776 A.2d at 1238–39. The same is true with respect to the retainage related interest and penalties imposed by the court pursuant to section 1116(4) in connection with Walsh Brothers's receipt of $31,472.82 by April 30, 1997. *See id.* ¶ 27 n. 13, 776 A.2d at 1238. These findings also provided a proper foundation for the court's award of attorney fees pursuant to section 1118(4).

### B. Entry of Judgment Against Aetna

[¶ 12] In *Jenkins I,* we noted that Jenkins's claims against UNE and Aetna were not before the Court on appeal:

> UNE and The Aetna Casualty & Surety Company were also named defendants but are no longer parties to this action. The court granted summary judgment in favor of UNE on Jenkins's lien claim, resolving count I of the complaint. Count V, regarding a bond issued by Aetna, was dismissed by agreement of the parties. Those counts are not before us.

*Id.,* ¶ 5 n. 4, 776 A.2d at 1233. Count V was the only count in which Jenkins sought relief against Aetna. Following the remand of this case, Jenkins argued to the Superior Court that our statement in *Jenkins I* that the count against Aetna had been dismissed by agreement of the parties was "an error by the Law Court as to their status." Jenkins explained that its failure to include relief against Aetna in the proposed judgment it originally submitted to the court was an unintentional oversight. Aetna responded at the hearing that counsel for the parties had agreed at the outset that Aetna "was out of the case." The trial justice stated that he did not have a memory of what had been agreed by the parties, but that "it was pretty clear ... that Aetna was out of the case." The court ultimately relied on the absence of any docket entry reflecting the dismissal of the claim against Aetna when it included Aetna in the judgment, holding Aetna "jointly and severally liable under Count V (payment bond claim) for all amounts included in paragraph 1" against Walsh Brothers.

[¶ 13] Aetna contends that the court's inclusion of Aetna in the judgment issued following the remand is an abuse of discretion because Jenkins failed to prosecute its claim against Aetna, and that it is also

clearly erroneous because Jenkins failed to prove the elements of the claim. We do not reach these issues, however, because we conclude that the court's award of relief against Aetna exceeded the scope of our mandate in *Jenkins I* and must, therefore, be vacated.

 [¶ 14] Although the merits of Jenkins's claim against Aetna were not raised in *Jenkins I*, the status of the claim was considered because it was necessary to our determination of whether the appeal was taken from a final judgment. *See Gagnon v. Allstate Ins. Co.*, 635 A.2d 1312, 1314 (Me.1994) (ruling that Law Court generally only reviews judgments it deems final insofar as the trial court's action fully decides the matter and no subsequent proceedings will render the appellate court's decision immaterial). In the absence of a final judgment or any of the narrowly defined exceptions to the final judgment rule, the Law Court will not entertain an appeal.[7] Based upon the record, briefs, and argument of counsel, we expressly concluded in *Jenkins I* that Jenkins's claim against Aetna had been voluntarily dismissed. This constitutes a determination on appeal as to Aetna's status as a party to the action.

[¶ 15] Jenkins could have raised the failure of the original judgment to award it relief against Aetna as an issue in its first appeal. Jenkins could have also sought our reconsideration of the status of its claim against Aetna following the certification of our decision in *Jenkins I*, based upon its belief, expressed subsequently to the Superior Court, that we misapprehended the status of its claim against Aetna. *See* M.R.App. P. 14(b)(1) (A motion for reconsideration may be filed within fourteen days after the date of the decision and "shall state with particularity the points of law or fact that in the opinion of the moving party the Court has overlooked or misapprehended...."). Jenkins failed, however, to seek appellate review of the original judgment's silence as to Aetna and also failed to request reconsideration of our opinion in *Jenkins I*.

 [¶ 16] Jenkins argues that the court's entry of judgment against Aetna following the remand was authorized by Rule 60(a) of the Maine Rules of Civil Procedure which permits the correction of "[c]lerical mistakes" in judgments "arising from oversight or omission." The inclusion of Aetna in the judgment, however, reflects an effort to correct an error resulting from the court's earlier understanding that Aetna was "out of the case." The court's authority under Rule 60(a) does not extend to correcting a substantive error in a judgment. *Compare Taylor v. Lapomarda*, 1997 ME 216, ¶ 12, 702 A.2d 685, 689 (Rule 60(a) does not authorize relief where claimant did not contend that judgment entered by court failed to reflect the second verdict form returned by the jury, but rather contended court failed to enter a judgment consistent with the jury's intent); *with Williams v. Williams*, 645 A.2d 1118, 1122 (Me.1994) (Rule 60(a) authorizes relief where court inadvertently switched figure for wife's marital equity with amount of mortgage).

[¶ 17] Because the question of Aetna's status as a party defendant in this case was considered in *Jenkins I*, the entry of judgment against Aetna following the remand of this case exceeded the scope of this Court's mandate. *See Meiners v. Aetna Cas. & Sur. Co.*, 663 A.2d 6, 8 (Me. 1995) (trial court may not alter the Law Court's mandate following appeal); *Rose v.*

---

7. The final judgment rule is designed to prevent piecemeal review and promote judicial economy. *See IHT Corp. v. Paragon Cutlery Co., Inc.*, 2002 ME 68, ¶ 4, 794 A.2d 651, 652;

*State v. Pinkham*, 586 A.2d 730, 731 (Me. 1991); *Maine Cent. R.R. v. Bangor & Aroostook R.R.*, 395 A.2d 1107, 1113 n. 7 (Me. 1978).

*Osborne,* 136 Me. 393, 400, 11 A.2d 345, 348 (1940) (trial court may not enlarge, limit, or modify the scope of the Law Court's mandate). Accordingly, the judgment against Aetna must be vacated.

The entry is:

Judgment affirmed as against Walsh Brothers, Inc. Judgment vacated as against Aetna Casualty & Surety Co. and remanded to the Superior Court for entry of a judgment of dismissal pursuant to M.R. Civ. P. 42(a)(2).