2009 ME 124

**GARRISON CITY BROADCASTING, INC.**

v.

**YORK OBSTETRICS & GYNECOLOGY, P.A., et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Oct. 14, 2009.
Decided: Dec. 15, 2009.

Patrick S. Bedard, Esq., Bedard & Bobrow, P.C., Eliot, ME, for Garrison City Broadcasting, Inc.

Kevin G. Libby, Esq., Erica M. Johanson, Esq., Monaghan Leahy, LLP, Portland, ME, for York Obstetrics & Gynecology, P.A., Wagright, LLC and Stephen Wagoner.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

LEVY, J.

[¶ 1] Garrison City Broadcasting, Inc. appeals from a judgment of the Superior Court (York County, *Fritzsche, J.*), following a jury-waived trial, finding that York Obstetrics & Gynecology, P.A. was not liable for a fraudulent transfer under the Uniform Fraudulent Transfer Act, 14 M.R.S. §§ 3571–3582 (2008). Garrison asserts that York Obstetrics did not produce sufficient evidence to prove the affirmative defense that its payments of past due rent to an insider affiliate, Wagright, LLC, were made within the ordinary course of business. *See* 14 M.R.S. § 3579(6)(B) (2008).[1] We affirm the judgment.

## I. BACKGROUND

[¶ 2] York Obstetrics and Gynecology, P.A. was a partnership originally formed between Dr. Stephen Wagoner and Dr. Lynda Wright in 1990. In 1998, Dr. Wagoner and Dr. Wright formed Wagright, LLC, and in early 1999 conveyed the office condominium that housed their practice to Wagright. York Obstetrics and Wagright entered into a rental agreement by which Wagright rented the office condominium to York Obstetrics for an amount equal to Wagright's expenses associated with the condominium, including its mortgage payments, condominium fees, property taxes, insurance, and accounting and tax preparation fees.[2]

[¶ 3] In 2001, Dr. Wright left the practice and sold her shares of both York Obstetrics and Wagright to Dr. Wagoner, leaving him the sole owner of both ven-

---

1. Garrison also asserts that the Superior Court erroneously concluded that York Obstetrics was not liable because its transfer to Wagright constituted a good faith effort to rehabilitate the business pursuant to 14 M.R.S. § 3579(6)(C) (2008). Because the Superior Court indicated that York Obstetrics

"perhaps" has proven this defense, and because we affirm on other grounds, we do not address this issue.

2. This amount varied from year to year, but in 2005 it totaled approximately $4811.15 per month.

tures. Shortly after Dr. Wright left, in August 2002, Wagright fell behind on its property tax payments. York Obstetrics, which was also facing financial difficulties, took out a loan in the amount of $55,000 in February 2004 to pay mounting creditors, but on April 29, 2005, decided to begin the process of winding down its business.

[¶ 4] York Obstetrics contracted with Garrison City Broadcasting to broadcast radio advertisements from September to December 2003. Garrison provided services according to the agreement, but York Obstetrics failed to pay Garrison in full, paying only $14,515 of its $24,665 bill.[3]

[¶ 5] Beginning in January 2004, York Obstetrics made payments to Wagright toward past due amounts it owed under the rental agreement. The payments concluded in July 2005. Wagright used the funds to pay the mortgage and related expenses for the office condominium.

[¶ 6] Garrison initiated this action in the Superior Court in December 2005. In its amended complaint, Garrison asserted that the payments York Obstetrics made to Wagright were fraudulent transfers to insiders, entitling Garrison to relief under the Uniform Fraudulent Transfer Act. After a jury-waived trial, the Superior Court determined that York Obstetrics's payments to Wagright did not constitute fraudulent transfers pursuant to 14 M.R.S. §§ 3575(1), 3576(1) (2008) because "a reasonably equivalent value was obtained as a legitimate debt was paid which allowed York [Obstetrics] to maintain its office space." The court further found that Gar-

rison had initially demonstrated that the transfers met the definition of "transfer to [an] insider," as that term is used in 14 M.R.S. § 3576(2) (2008),[4] but that York Obstetrics had established that the transfers were "in the ordinary course of business or financial affairs of the debtor and the insider," an affirmative defense enumerated in 14 M.R.S. § 3579(6)(B). In response to Garrison's motion for additional findings of fact and conclusions of law, the court explained that Wagright had "essentially paid the rent for York Obstetrics' office space. That decision to pay the insider, which in turn paid the rent, is a legitimate decision made in the ordinary course of business of the debtor and the insider." Garrison filed this appeal.

## II. DISCUSSION

[¶ 7] Garrison challenges (A) the Superior Court's construction of 14 M.R.S. § 3579(6)(B), and (B) the sufficiency of the evidence to support the court's conclusion that the challenged payments were "made in the ordinary course of business or financial affairs of the debtor and the insider." *See* 14 M.R.S. § 3579(6)(B).

### A. Construction of 14 M.R.S. § 3579(6)(B)

[¶ 8] Garrison asserts that the affirmative defense established in section 3579(6)(B) required York Obstetrics to prove that the challenged payments of rent in arrears were part of an established pattern of payment behavior between York Obstetrics, the debtor, and Wagright, the

---

**3.** In July 2004, Garrison brought suit against York Obstetrics for breach of contract and unjust enrichment. A stipulated judgment was entered against York Obstetrics in August 2005 in the amount of $9650.

**4.** Title 14 M.R.S. § 3576(2) (2008) provides, in relevant part:

**2. Transfer to insider.** A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent.

insider. Under this construction of the statute, York Obstetrics would have been required to prove that its late payment of rent to Wagright was, in Garrison's words, a "normal business practice" that preceded the specific late payments challenged as fraudulent, and this it did not do.

[¶ 9] We review statutory interpretation de novo as a question of law:

When interpreting a statute, our objective is to give effect to the Legislature's intent. To determine that intent, we first look to the statute's plain meaning. If there is no ambiguity, we do not examine legislative history. If ambiguity exists, we look beyond the statutory language to its legislative history. We also consider the whole statutory scheme of which the section at issue forms a part, so that a harmonious result, presumably the intent of the Legislature, may be achieved.

*Ashe v. Enterprise Rent–A–Car*, 2003 ME 147, ¶ 7, 838 A.2d 1157, 1159 (citing *State v. Bjorkaryd–Bradbury*, 2002 ME 44, ¶ 9, 792 A.2d 1082, 1084).

[¶ 10] The plain language of section 3579(6)(B) protects transfers determined to be "in the *ordinary* course of business or financial affairs," 14 M.R.S. § 3579(6)(B) (emphasis added), and not, more narrowly, those determined to be a "normal business practice." A one-time late payment of rent may be an abnormal practice as between a debtor and an insider, but may still constitute a transfer of funds in the ordinary course of business when assessed in the broader context of a

particular business's circumstances. Because we construe unambiguous statutes in accordance with their plain meaning, *see Ashe*, 2003 ME 147, ¶ 7, 838 A.2d at 1159, there is no reason to engraft the more restrictive "normal business practice" standard on the statute's broader "ordinary course of business" standard enacted by the Legislature.

### B. Sufficiency of the Evidence

[¶ 11] Garrison also challenges the sufficiency of the evidence that the transfer was in the ordinary course of business. Because section 3579(6)(B) is an affirmative defense, York Obstetrics had the burden of proving the defense at trial. *See ABN AMRO Mortgage Group v. Willis*, 2003 ME 98, ¶ 5, 829 A.2d 527, 529; *see also* U.F.T.A. § 8, cmt. 1 (1984).[5]

[¶ 12] Generally, sufficiency of the evidence challenges by a party who did not bear the burden of proof at trial are resolved by clear error review. *See generally Pratt v. Spaulding*, 2003 ME 56, ¶ 10, 822 A.2d 1183, 1186; *cf. Westleigh v. Conger*, 2000 ME 134, ¶ 12, 755 A.2d 518, 520. We therefore examine the record, and the reasonable inferences that may be drawn from the record, in the light most favorable to the trial court's judgment to determine if the facts are supported by competent evidence. *See id.* The meaning and weight given to the exhibits and testimony of the witnesses by the fact-finder must be upheld unless clearly erroneous. *Jenkins, Inc. v. Walsh Bros., Inc.*, 2002 ME 168, ¶ 7, 810 A.2d 929, 933.[6]

---

**5.** Although the Uniform Fraudulent Transfer Act, on which Maine's Uniform Fraudulent Transfer Act is based, does not establish that every defense listed under section 8 (the equivalent of 14 M.R.S. § 3579 (2008)) is an affirmative defense, courts have extrapolated from comment 1 that all defenses in that section are intended to be affirmative defens-

es. *See, e.g., Prairie Lakes Health Care Sys., Inc. v. Wookey*, 583 N.W.2d 405, 414 (S.D. 1998).

**6.** Additionally, in cases such as this, where a party moves for further findings of fact pursuant to M.R. Civ. P. 52(a), the explicit findings must be: (1) sufficient to support the result, *see Jarvis v. Jarvis*, 2003 ME 53, ¶ 18, 832

[¶ 13]   Viewed in the light most favorable to the court's judgment, the record evidence establishes that York Obstetrics regularly paid Wagright rent in a timely manner until it encountered business difficulty.   Garrison itself introduced evidence that Wagright acquired the condominium in 1999 and that York Obstetrics has occupied the premises since then as a tenant. Wagright and York Obstetrics had a longstanding landlord/tenant relationship prior to the onset of financial difficulties in 2002–2003.

[¶ 14]   Although the record could support the opposite conclusion, the evidence was sufficient for the court to conclude that York Obstetrics has met its burden of proof and persuasion as to its affirmative defense.   Because it is the factfinder that must consider the weight and significance of evidence, we defer to the Superior Court's determinations regarding the weight and significance of the evidence in this case.   *See Dombkowski v. Ferland,* 2006 ME 24, ¶ 28, 893 A.2d 599, 606 (quotation marks omitted); *see also Eaton v. Town of Wells,* 2000 ME 176, ¶ 29, 760 A.2d 232, 243; *Jenkins,* 2002 ME 168, ¶ 7, 810 A.2d at 933.   The court could reasonably conclude that the payments of rent that are the subject of this action were made within the ordinary course of York Obstetrics's business, even though the timing of the payments was unique because they were late.

The entry is:

Judgment affirmed.

A.2d 775, 779;   (2) supported by evidence in the record, *see id.*;   and (3) sufficient to inform the parties and any reviewing court of the factual and legal basis for the trial court decision, *see State v. Greenleaf,* 2004 ME 149, ¶ 29, 863 A.2d 877, 883 (discussing motions for further findings of fact pursuant to M.R.Crim. P. 23(c)).