2010 ME 64

**ALLIED RESOURCES, INC.**

v.

**DEPARTMENT OF PUBLIC SAFETY et al.**

Supreme Judicial Court of Maine.

Argued: June 15, 2010.
Decided: July 20, 2010.

David Turesky, Esq. (orally), Portland, ME, for Allied Resources, Inc.

Janet T. Mills, Attorney General, Michelle M. Robert, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, ME, for the Liquor Licensing Division of the Maine Department of Public Safety.

Gary C. Wood, Esq. (orally), City of Portland, Office of Corporation Counsel, Portland, ME, for the City of Portland.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

SAUFLEY, C.J.

[¶ 1] The City of Portland voted in February of 2009 to deny renewal of a liquor license to the "Cactus Lounge," a bar owned and operated by Allied Resources, Inc. After a de novo review, the Liquor Licensing Division of the Department of Public Safety affirmed the denial, and the District Court (Portland, *Beaudoin, J.*) affirmed the decision of the Department. The bar has continued to operate throughout this process. Allied now appeals from the denial of the license renewal, asserting, among other evidentiary and constitutional claims, that the license was automatically renewed by operation of law after the City failed to act within 120 days as required by statute. *See* 28–A M.R.S. § 653(1)(C) (2009). Because we conclude that the City did not act within the 120 days and that Allied's 2009 license was automatically renewed, we must vacate the decisions to the contrary.

## I. BACKGROUND

[¶ 2] On November 4, 2008, Allied applied to the City of Portland to renew the annual on-premises liquor license for the Cactus Lounge, which was due to expire on December 18, 2008. Pursuant to 28–A M.R.S. § 653(1)(C), the City was required to take final action on Allied's application within 120 days from the time the application was filed, that is, March 4, 2009.

### A. The Municipal Decision

[¶ 3] On February 2, 2009, the City Council held a public hearing but postponed action on the application after a four-to-four tie vote. On February 18, 2009, 106 days after the application was filed, the City held another hearing and voted six-to-two to deny renewal of Allied's license. Allied was aware of the results of this vote. On March 13, 2009, 129 days after the application was filed, the City issued written notice of its decision denying Allied's application and delivered a copy to Allied the same day. The City based its decision on the factual findings that: (1) there were numerous incidents of breaches of the peace, disorderly conduct, and other violations of law involving patrons of the Cactus Lounge inside the premises and in the immediate vicinity of the premises, *see* 28–A M.R.S. § 653(2)(D) (2009); (2) Allied failed to maintain a city license and served alcohol to a minor, *see* 28–A M.R.S. § 653(2)(E) (2009); and (3) the manner in which Allied operated the Cactus Lounge "endangered the safety of persons in or on areas surrounding the place of business," *see* 28–A M.R.S. § 654(1) (2009).

### B. Appeal to the Department

[¶ 4] Allied timely appealed the City's decision to the Department, *see* 28–A M.R.S. § 653(3) (2009), and continued to operate the Cactus Lounge under a temporary license that was extended pending renewal, *see* 5 M.R.S. § 10002 (2009). Allied filed a motion with the Department seeking to vacate the City's denial on the grounds that the application should have been deemed approved by the City when the City failed to take final action, by issuing a written decision, within 120 days of the filing of the application pursuant to 28–A M.R.S. § 653(1)(C). In June 2009, the Department concluded that the City "took action ... within 120 days," and it denied Allied's motion. In August 2009, the Department held a three-day de novo hearing. At the hearing, Allied renewed its argument that its application should have been automatically approved as a matter of law.

[¶ 5] On December 2, 2009, the Department affirmed the City's denial of the application because it did not "find [ ] by clear and convincing evidence that the [City's] decision was without justifiable cause." *See* 28–A M.R.S. § 653(3)(B). The Department supported its decision with findings of five incidents of breaches of the peace as well as two administrative violations—failure to maintain a City license and serving liquor to a minor. *See* 28–A M.R.S. §§ 653(2)(D), (E), 654(1). With its decision, the Department withdrew Allied's temporary license effective December 30, 2009.

### C. Appeals to the District Court and to the Law Court

[¶ 6] On December 17, 2009, Allied timely appealed the Department's decision to the District Court, *see* 28–A M.R.S. § 653(5) (2009); 5 M.R.S. § 10051(3) (2009); M.R. Civ. P. 80C, and moved for a stay of final agency action, *see* M.R. Civ. P. 80C(b); 5 M.R.S. § 11004 (2009). The court (*Goranites, J.*) granted a temporary stay until January 8, 2010.

[¶ 7] On January 7, 2010, Allied appealed to this Court, and we ordered a stay pending the appeal. We later dismissed

the appeal as interlocutory, leaving the stay in effect subject to disposition by the court on remand.

[¶ 8] On May 12, 2010,[1] the court (*Beaudoin, J.*) affirmed the Department's denial of license renewal and dissolved our stay, effective May 21. On May 18, Allied timely filed this appeal and sought a further stay to avoid losing its license pending appeal. We extended the stay and ordered expedited review.

## II. DISCUSSION

[¶ 9] The liquor license application review has not been the prompt and expeditious process that was envisioned by the Legislature. Allied's license renewal application that was filed in November of 2008 is only now reaching the appellate court in the summer of 2010. Throughout this protracted process, Allied's license has remained in effect. If the City and the Department are correct that the manner of operation of the Cactus Lounge endangers public safety, then the process has failed the citizens of Portland. Cognizant of this concern, we have expedited the appeal.

[¶ 10] On appeal from the City's decision, the Department held a de novo hearing. It is the final fact-finder and decision-maker in this matter. Thus, although the appeal before us is from the judgment of the District Court, we review the decision of the administrative agency directly. *See Cobb v. Bd. of Counseling Prof'ls Licensure*, 2006 ME 48, ¶ 10, 896 A.2d 271, 275.

[¶ 11] Although our review of state agency decisions is deferential on questions of fact, *Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶¶ 12–13, 989 A.2d 1128, 1133, we review legal questions of statutory interpretation de novo, *Garrison City Broad., Inc. v. York Obstetrics & Gynecology, P.A.*, 2009 ME 124, ¶ 9, 985 A.2d 465, 468; *see Rich v. Dep't of Marine Res.*, 2010 ME 41, ¶ 5, 994 A.2d 815, 817. "Our primary purpose in interpreting a statute is to give effect to the intent of the Legislature." *Rich*, 2010 ME 41, ¶ 7, 994 A.2d at 817–18 (quotation marks omitted).

[¶ 12] In denying Allied's motion to reverse the City's decision, the Department concluded that the City acted, as required by law, within 120 days. We review the Department's interpretation of section 653(1)(C) de novo.

[¶ 13] Section 653(1) provides, in relevant part:

> C. If the municipal officers ... fail to take final action on an application for a new on-premises license ... within 60 days of the filing of an application, the application is *deemed approved* and ready for action by the bureau.[2] For purposes of this paragraph, the date of filing of the application is the date the application is received by the municipal officers.... This paragraph applies to all applications pending before municipal officers ... as of the effective date of this paragraph as well as all applications filed on or after the effective date of this paragraph. This paragraph applies to an existing on-premises license that has been extended pending renewal. The municipal officers ... shall take *final action* on an on-premises license that has been extended pending renewal within 120 days of the filing of the application.

28–A M.R.S. § 653(1)(C) (emphasis added) (footnote added).

---

1. The court recognized the time-sensitive nature of this matter and generated a succinct and expeditious judgment after hearing oral argument on this matter on May 7, 2010.

2. The "bureau" is the liquor licensing division within the Department of Public Safety. 28–A M.R.S. § 2(6) (2009).

A. "Deemed Approved"

■ [¶ 14] We begin the statutory analysis with the City's[3] contention that the automatic approval provision of section 653(1)(C) does not apply to license renewal applications.

■ [¶ 15] When statutory language is unambiguous, "[w]e discern legislative intent from the plain meaning of the statute and the context of the statutory scheme." *Cobb*, 2006 ME 48, ¶ 11, 896 A.2d at 275. "All words in a statute are to be given meaning, and none are to be treated as surplusage if they can be reasonably construed." *Id.*

[¶ 16] Section 653(1)(C) consists of five sentences. The first sentence clearly states the essence of the paragraph—to provide for automatic approval of a new on-premises license application if the municipal officers fail to take final action within sixty days of the filing of the application. *See* 28–A M.R.S. § 653(1)(C). The second sentence defines when an application is deemed filed. *See id.* The third sentence defines the applicability of the paragraph in relation to the statute's effective date. *See id.*

[¶ 17] The fourth and fifth sentences address license renewals, rather than initial applications.[4] The fourth sentence states, "This paragraph applies to an existing on-premises license that has been extended pending renewal." *Id.* That language provides an unequivocal connection to the deemed approved language in the preceding sentences. The final sentence qualifies the timing of the paragraph's application to renewals by specifying that the municipal officers "shall take final action ... within 120 days of the filing of the application." *See id.*

[¶ 18] If the statute were interpreted not to provide automatic approval of "an existing on-premises license that has been extended pending renewal," then the fourth sentence would be surplusage because application of the second and third sentences to a license renewal would be meaningless if the first sentence did not apply. Thus, the automatic approval provision of section 653(1)(C) applies to "an existing on-premises license that has been extended pending renewal" when the municipal officers or county commissioners fail to take "final action" on the renewal application within 120 days of the filing of the application. This construction of section 653(1)(C) is reasonable and gives meaning to all words in the statute, *see Cobb*, 2006 ME 48, ¶ 11, 896 A.2d at 275, and it reflects a clear intention by the Legislature to impose self-effectuating license approval in the absence of municipal action within a time certain.

B. "Final Action"

■ [¶ 19] The question presented thus becomes: what constitutes "final action" for purposes of section 653? Allied contends that the City took "final action" when it issued its written decision on March 13, 2009. The Department and the City argue that the City took "final action" when it voted publicly to deny the application on February 18, 2009.

[¶ 20] The relevant statutes do not define "final action." *See* 28–A M.R.S. § 2 (2009). Because reasoned arguments can be made in support of either party's interpretation of "final action," the term is ambiguous. *See Damon v. S.D. Warren Co.*, 2010 ME 24, ¶ 10, 990 A.2d 1028, 1032.

---

3. The City of Portland is a co-appellee in this matter. The Department concedes that if the City did not take final action within 120 days, then the automatic approval provision of section 653(1)(C) would apply.

4. The Legislature added the fourth and fifth sentences effective August 11, 2000. P.L. 1999, ch. 589, § 1.

[¶ 21] When statutory terms are ambiguous, we defer to the agency's interpretation of a statute that is within its area of expertise unless it is unreasonable, *Cobb*, 2006 ME 48, ¶ 13, 896 A.2d at 275, that is, "unless the statute plainly compels a contrary result," *Me. Ass'n of Health Plans v. Superintendent of Ins.*, 2007 ME 69, ¶ 32, 923 A.2d 918, 927 (quotation marks omitted). To determine the reasonableness of an agency's interpretation, we examine the legislative history as well as the context of "the whole statutory scheme of which the section at issue forms a part, so that a harmonious result, presumably the intent of the Legislature, may be achieved." *See Me. Ass'n of Health Plans,* 2007 ME 69, ¶ 46, 923 A.2d at 930; *Garrison City Broad.*, 2009 ME 124, ¶ 9, 985 A.2d at 468 (quotation marks omitted); *see also State v. Ray*, 1999 ME 167, ¶ 7, 741 A.2d 455, 457 (stating that a term that is not defined by a statute must be given a meaning that is "consistent with the overall statutory context and must be construed in the light of the subject matter, the purpose of the statute and the consequences of a particular interpretation" (quotation marks omitted)).

[¶ 22] We look first to the Department's own interpretation of this section of the liquor licensing statutes, which are within its area of expertise. *See* 28–A M.R.S. § 82(3) (2009) (conferring on the bureau the authority to issue and renew all liquor licenses); *Me. Ass'n of Health Plans,* 2007 ME 69, ¶ 42, 923 A.2d at 929–30. In concluding that the City acted within 120 days, the Department implicitly interpreted "take final action" to mean taking a final vote instead of issuing a written decision. Whether that interpretation is reasonable must be understood in the context of the statutory licensing scheme and with reference to the legislative history of section 653. *See Me. Ass'n of Health Plans,* 2007 ME 69, ¶ 46, 923 A.2d at 930; *Garrison City Broad.*, 2009 ME 124, ¶ 9, 985 A.2d at 468.

[¶ 23] The legislative history of section 653(1)(C) is unenlightening. The summary accompanying the 2000 amendment of section 653(1)(C) explained that "[this amendment] . . . states that municipal officers . . . must make a *final decision* on the renewal within 120 days." Comm. Amend. A. to L.D. 2298, No. S–509, Summary (119th Legis.2000) (emphasis added). The summary accompanying the 2001 amendment of section 653(1)(C) stated, "This bill clarifies that municipal officers . . . have 60 days to take *final action* on a new application for an on-premise liquor license. Renewal license applications *must be approved* within 120 days." L.D. 1883, Summary (120th Legis.2001) (emphasis added). The language of these legislative statements is as ambiguous as the statutory language. "Final decision" may mean "final vote" or "final written decision." Similarly, an application could "be approved" by a vote or by a written decision.

[¶ 24] With no guidance from legislative history, we consider the statutory context,[5] including the statutory purpose and

---

**5.** The importance of restricting the analysis within the context of the liquor licensing statutes is made clear in this case because there is no consistent meaning for "final action" in the almost forty statutes in the Maine Revised Statutes in which the term appears. *Compare, e.g.,* 22 M.R.S. § 1844 (2009) ("[ **(4)(F)** ] The department shall issue a final decision to grant or deny an application [within a specified time frame].... The ... final decisions must be in writing and set forth the basis for the decisions.... [ **(7)** ] The Attorney General may file an action in Superior Court to enforce any final action taken by the department under this section."), *with* 36 M.R.S. § 842 (2009) ("The assessors or municipal officers shall give to any person applying to them for an abatement of taxes notice in writing of their decision upon the application within 10 days after they take final action thereon.").

the consequences of a particular interpretation. *See Garrison City Broad.,* 2009 ME 124, ¶ 9, 985 A.2d at 468; *Ray,* 1999 ME 167, ¶ 7, 741 A.2d 455, 457.

[¶ 25] Within the context of section 653, subsection (2) requires municipal officers to provide an applicant with written findings in support of a decision.[6] *See* 28–A M.R.S. § 653(2) (2009).[7] This requirement strongly suggests that municipal officers do not take "final action" until, "[i]n granting or denying an application, [they] ... indicate the reasons for their decision and provide a copy to the applicant." *See id.* This interpretation is also consistent with subsection (3), pursuant to which the receipt of a written decision triggers the running of the time in which an applicant must take an appeal. *See* 28–A M.R.S. § 653(3).[8]

[¶ 26] We distinguish other instances where we have given weight to final votes of a local board. In *Vachon v. Town of Kennebunk,* we held on those facts that a Town zoning board of appeals "rendered" its decision, for the purposes of determining the timeliness of an 80B appeal, when it took the "final public action" of voting at a public meeting, not when it issued a letter giving notice of the vote five days later. 499 A.2d 140, 141, 142 (Me.1985) (interpreting 30 M.R.S.A. § 2411(3)(F) (1978)); *see also Woodward v. Town of Newfield,* 634 A.2d 1315, 1317 (Me.1993) (following *Vachon* in interpreting a town ordinance). There, we reasoned that the board's decision was "rendered" when it voted on the matter because "all parties to the public proceeding will ordinarily know of the Board's public vote at the time it is taken" and the letter of notice "added nothing to that decision" because it "merely quoted the motion adopted at the [public] meeting." *Vachon,* 499 A.2d at 141, 142.

[¶ 27] Here, as in *Vachon,* the City considered Allied's application at a public hearing and Allied was aware of the results of the vote. However, although the statute in *Vachon* required findings, it did not require that they be included in the written notice of decision. *Woodward,* 634 A.2d at 1317; *see Vachon,* 499 A.2d at 142 n. 2 (quoting 30 M.R.S.A. § 2411(3)(E) (1978)). By contrast, section 653(2) expressly requires the municipal officers to provide the applicant with a copy of the reasons for their decision, and in this case, the City's written decision added detailed, statutorily mandated findings to the voted decision.

[¶ 28] Finally, we consider "the purpose of the statute and the consequences of a particular interpretation." *Ray,* 1999 ME 167, ¶ 7, 741 A.2d at 457 (quotation marks omitted). As discussed above, the purpose of section 653(1)(C) is self-evident: the Legislature intended to ensure prompt processing of liquor license renewal appli-

---

6. This requirement exceeds what is mandated by Maine's Freedom of Access Act (FOAA). FOAA requires agencies to make written records with findings to support conditional approvals and denials of license applications, *see* 1 M.R.S. § 407(1) (2009), but section 653 requires written decisions with findings for approvals as well as denials, *see* 28–A M.R.S. § 653(2) (2009). Additionally, section 653 requires that a copy of the written decision be given to the applicant, *see* 28–A M.R.S. § 653(2), whereas FOAA only requires that a copy of the written record be made available to the public, *see* 1 M.R.S. § 407(1).

7. Section 653(2) provides: "In granting or denying an application, the municipal officers ... shall indicate the reasons for their decision and provide a copy to the applicant." 28–A M.R.S. § 653(2).

8. Section 653(3) provides: "Any applicant aggrieved by the decision of the municipal officers ... under this section may appeal to the bureau within 15 days of the receipt of the written decision of the municipal officers...." 28–A M.R.S. § 653(3) (2009).

cations. Interpreting "take final action" to mean "take a final vote" instead of "issue a written decision with findings," would defeat this purpose because, although municipal officers would be required to vote within 120 days of the filing of an application, an applicant could wait indefinitely before receiving a written decision. The potential consequences of this interpretation would not be consonant with the purpose of the statute. If the final vote approves the license renewal, the new license would not issue until the written decision was published. If the final vote denies the renewal, the license extension would continue in effect until the written decision issued. *See* 5 M.R.S. § 10002. Throughout the time following the vote and before the issuance of the written decision, the community and the applicant would be left to wait for the next step, and the applicant would be unable to appeal from an unfavorable decision until it received the written notice with findings.

■ [¶ 29] Accordingly, because the context of the liquor licensing statutory scheme, particularly the provision of section 653(2) that requires municipal officers to provide a copy of written findings to the applicant, plainly compels an interpretation of "final action" that encompasses the written decision of the municipality, the interpretation of the Department is contrary to the law. *See Me. Ass'n of Health Plans,* 2007 ME 69, ¶¶ 32, 46, 923 A.2d at 927, 930.

[¶ 30] Therefore, pursuant to 28–A M.R.S. § 653(1)(C), municipal officers do not "take final action" until they issue a written decision supported by findings and provide a copy to the applicant pursuant to section 653(2). In this case, after the City

failed to take final action by March 4, 2009–120 days after Allied filed its renewal application—Allied's application was "deemed approved and ready for action by the [Department]" by operation of law.[9] *See* 28–A M.R.S. §§ 2(6), 653(1)(C).

The entry is:

Judgment vacated. Remanded to the District Court with instructions to remand to the Department of Public Safety for action on the 2009 license renewal application, which is deemed approved.

---

9. No party has suggested that the Department has the authority on these facts to deny the issuance of a renewed license notwithstanding the City's deemed approval. We do not opine further on the status of the current

license. Because we decide this appeal in Allied's favor based on the statutory interpretation of section 653(1)(C), we do not reach Allied's evidentiary and constitutional arguments.