2010 ME 29

**CAMDEN NATIONAL BANK**

v.

**STEAMSHIP NAVIGATION CO. et al.**

Supreme Judicial Court of Maine.

Argued: Jan. 13, 2010.
Decided: April 1, 2010.

Janet T. Mills, Attorney General, Lucinda E. White, Asst. Atty. Gen., Christopher C. Taub, Asst. Atty. Gen. (orally), Augusta, ME, for the State of Maine.

Daniel G. Lilley, Esq., Karen E. Wolfram, Esq. (orally), Daniel G. Lilley Law Offices, P.A., Portland, ME, for Daniel G. Lilley, P.A., and the Steamship Navigation Company.

Richard L. O'Meara, Esq., Murray, Plumb & Murray, Portland, ME, for amicus curiae Maine Trial Lawyers Association.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, MEAD, and JABAR, JJ.

Majority: SAUFLEY, C.J., and ALEXANDER, LEVY, and MEAD, JJ.

Dissent: JABAR, J.

MEAD, J.

[¶ 1] The State of Maine appeals, and Steamship Navigation Company (Steamship) cross-appeals, from the judgment of the Superior Court (Oxford County, *Wheeler, J.*) finding that Daniel G. Lilley, P.A. (Lilley) had perfected an attorney lien and was entitled to 35% of Steamship's "gross recovery" from a separate lawsuit. As we find no error in the trial court's conclusion that Lilley had perfected an attorney lien, we affirm that aspect of the judgment. However, we conclude that Lilley's contingent fee should have been based upon the net recovery by Steamship in its action against Camden National Bank (Bank), not the total jury award plus interest, and we vacate that portion of the judgment.

## I. BACKGROUND

[¶ 2] Steamship and the Bank have been involved in litigation concerning a series of events in their lending relationship since 2001. During that time, Steamship and the State were also involved in litigation regarding environmental violations at Steamship's property in the Town of Warren. Once the underlying claims between Steamship and the Bank were resolved, the Bank instituted this interpleader action to determine the priority of Steamship's creditors, which included both Lilley and the State. Viewed in the light most favorable to Lilley as the prevailing party, *see Garrison City Broad., Inc. v. York Obstetrics & Gynecology, P.A.*, 2009 ME 124, ¶ 13, 985 A.2d 465, 469, the record supports the following facts.

### A. Prior Litigation Between Steamship and the Bank

[¶ 3] In April 2001, Steamship filed a complaint, which included tort and contract claims, against the Bank. Three weeks later, the Bank brought a foreclosure action against Steamship. At that time, a law firm other than Lilley represented Steamship.

[¶ 4] Steamship's motion to dismiss the foreclosure action was denied. The court (*Perkins, J.*) agreed with the Bank that its claims in the foreclosure action were not compulsory counterclaims to Steamship's lawsuit pursuant to M.R. Civ. P. 13(a). However, the two cases were "consolidated pursuant to M.R. Civ. P. 42(a) for the purposes of discovery" due to "the overlap in parties and issues." Steamship then attempted to incorporate its tort and contract claims into the foreclosure action as counterclaims, but the court (*Delahanty, J.*) dismissed them with prejudice.

[¶ 5] Lilley joined the other law firm in its representation of Steamship in January 2002 and signed a contingent fee agreement (2002 Agreement) with them. In December 2002, a summary judgment was entered against Steamship in the foreclosure action. On one of the Bank's foreclosure claims, the court specified that the amount of attorney fees and costs would not be determined until Steamship's tort and contract action was resolved. For the Bank's other claims, the court allowed the Bank to wait for the resolution of Steamship's action before filing a claim for attorney fees and costs. The Bank subsequently obtained a deficiency judgment against Steamship.

[¶ 6] In the fall of 2004, it was agreed that the other law firm would be released from its representation, and Lilley executed a new contingent fee agreement (2004 Agreement) with Steamship. Pursuant to the 2004 Agreement, Lilley would be paid

"35% . . . for settlement or trial (not to include appeal) of gross recovery." (Emphasis omitted.) It also stated that the contingent fee would be based upon "actual collection of judgment or settlement" and paid "via direct deduction from funds received in trust." [1]

[¶ 7] In September 2004, a jury awarded Steamship $1,500,000 in its action against the Bank. We affirmed the judgment on appeal. *S.S. Navigation Co. v. Camden Nat'l Bank,* 2006 ME 11, ¶¶ 7–10, 889 A.2d 1014, 1017–18.

[¶ 8] In September 2006, the court (1) denied Steamship's motion to set aside the foreclosure judgment; (2) set off the Bank's deficiency judgment resulting from the foreclosure action against Steamship's jury award, leaving a balance of $638,290.66 owing to Steamship; and (3) calculated the costs, expenses, and accrued interest on both parties' judgments. On appeal, we affirmed each aspect of the court's judgment. *Camden Nat'l Bank v. Dunican,* Mem–07–84 (May 8, 2007).

B. The Current Interpleader Action

[¶ 9] Following the court's set off of the Bank's deficiency judgment against Steamship's jury award, the Bank filed this interpleader action. It requested that the court allow it to pay its net obligation through the court, which would halt the accrual of interest, and determine the priority of Steamship's creditors, including Lilley and the State. In August 2007, the court (*Wheeler, J.*) (1) denied Steamship's motion to dismiss the interpleader action; (2) authorized the Bank to make payment to the court; and (3) determined that the Bank should pay $638,290.66 plus the post-judgment interest that had accrued on the

full amount of the $1,500,000 judgment. The Bank subsequently paid $739,000.38 to the court (the interpleader fund).[2]

[¶ 10] Following a trial on the interpleader action, the court determined that (1) Lilley had established a valid attorney lien as to "35% of the gross Steamship recovery," (2) attorney fees in that amount would be reasonable, and (3) the attorney lien had first priority. Also, the court denied Steamship's motion for judgment as a matter of law against the State, which claimed that the State had not perfected its lien against Steamship. The State's appeal and Steamship's cross-appeal followed.

## II. DISCUSSION

A. Perfection of Lilley's Attorney Lien

[¶ 11] In its appeal, the State initially argued that an attorney lien should be held to the same perfection standards as other types of liens, and it contended Lilley had not satisfied these requirements. The State has since taken the position that we need not address the perfection issue if we find that Lilley's lien should have been based on 35% of the interpleader fund, rather than 35% of Steamship's jury award plus interest. We find no error in the trial court's conclusion that Lilley had established and perfected an attorney lien, and we affirm that portion of the judgment. *See Libner v. Me. County Comm'rs' Ass'n,* 2004 ME 39, ¶¶ 10–11, 845 A.2d 570, 573; *Newbert v. Cunningham,* 50 Me. 231, 232–33 (1863).

B. The Set Off

 [¶ 12] Before discussing the calculation of Lilley's contingent fee, we note

---

**1.** Steamship and Lilley re-executed the 2004 Agreement in June 2006 after neither could find their previously executed copies.

**2.** By agreement, the money was transferred to an interest-bearing bank account. With the accrual of interest, the interpleader fund contained $767,993.09 as of January 2009.

that, functionally, the Bank's deficiency judgment and Steamship's jury award were part of a single recovery. Although the Bank's foreclosure action and Steamship's tort/contract action were not fully consolidated, they were consolidated for discovery due to the recognition that there was an "overlap in parties and issues." The cases were also brought together to calculate the Bank's attorney fees. In its previous appeals, Steamship did not assert error in the denial of its motion to dismiss the Bank's foreclosure action and the dismissal of its counterclaims in that action. In this unusual circumstance, we approved the set off, *Camden Nat'l Bank*, Mem–07–84, even though a request for a set off must ordinarily be adequately pleaded to give notice to the other party, which does not appear to have occurred here.[3] *See FDIC v. Notis*, 602 A.2d 1164, 1165–66 (Me.1992). Therefore, in determining Lilley's contingent fee, we continue to treat the set off as if it had been pleaded as a claim or counterclaim in either the foreclosure action or the tort/contract action.

## C. Basis for Calculating Lilley's Contingent Fee

[¶ 13] The State has advanced several public policy reasons why Lilley's contingent fee pursuant to its attorney lien should be limited to 35% of the interpleader fund instead of 35% of Steamship's jury award plus interest. Although we agree that the basis for Lilley's contingent fee should be 35% of the interpleader fund, we rest our conclusion on other grounds.

[¶ 14] The amount of an attorney's contingent fee pursuant to an attorney lien is determined according to the contingent fee agreement. 7 Am.Jur.2d *Attorneys at Law* § 320 (2007). Unless the contingent fee agreement provides otherwise, an attorney "is entitled to receive the specified fee only when and to the extent the client receives payment." Restatement (Third) of The Law Governing Lawyers § 35(2) (2000); *see also* M. Bar R. 8(e)(4) (2008) (abrogated 2009).[4] "In the absence of [a] prior agreement to the contrary, the amount of the client's recovery is [the] computed net of any offset, such as a recovery by an opposing party on a counterclaim." Restatement (Third) of The Law Governing Lawyers § 35 cmt. d; *see also Levine v. Bayne, Snell & Krause, Ltd.*, 40 S.W.3d 92, 94–96 (Tex. 2001) (applying Restatement (Third) of The Law Governing Lawyers § 35 cmt. d); *Underwood v. Rich*, 48 Ga.App. 550, 173 S.E. 224, 226–27 (1934) (finding that basis

---

3. The record strongly suggests that the Bank's foreclosure action and Steamship's tort/contract action should have been consolidated. *See* M.R. Civ. P. 42. With the exception of one additional party in the tort/contract action, the parties in each case were identical and the facts and issues were closely related, suggesting that each side's claims were compulsory counterclaims to the other's primary claims. *See Efstathiou v. The Aspinquid, Inc.*, 2008 ME 145, ¶¶ 25–28, 956 A.2d 110, 119; M.R. Civ. P. 13(a). In order to prevent later confusion regarding parties' respective rights and credits, consolidation should always be ordered in appropriate matters unless compelling factors dictate otherwise.

4. Former M. Bar R. 8(e) (2008) (abrogated 2009) provided, "Each contingent fee agreement shall contain ... (4) a statement of the contingency upon which compensation is to be paid, and whether and to what extent the client is to be liable to pay compensation otherwise than from amounts collected for that client by the attorney." This version of the rule was in effect when the 2004 Agreement was executed and when it was re-executed in 2006. The current rule on contingent fee agreements, M.R. Prof. Conduct 1.5(c), does not contain an analogous requirement that the agreement specify "whether and to what extent the client is to be liable to pay compensation otherwise than from amounts collected for that client by the attorney." M. Bar R. 8(e)(4).

for calculating attorney's contingent fee was client's net recovery after any set offs); *Wooldridge v. Bradbury*, 185 Ky. 587, 215 S.W. 406, 407–08 (1919) (same); *Maiullo v. Genematas*, 16 Mich.App. 231, 167 N.W.2d 849, 850–51 (1969) (same); *Kramer v. Fallert*, 628 S.W.2d 671, 674 (Mo.Ct.App.1981) (same); *William J. Murphy, Attorney At Law, P.C. v. State*, 157 A.D.2d 155, 557 N.Y.S.2d 555, 556 (1990) (same).

■ [¶ 15] In this case, the 2004 Agreement expressly rescinded the 2002 Agreement; therefore, we consider the 2004 Agreement's terms. The 2004 Agreement provided that the contingent fee would be based upon the "actual collection of judgment or settlement" and paid "via direct deduction from funds received in trust." The total jury award was never collected by Steamship or received in trust. The amount in the interpleader fund is the amount that was owed to Steamship *after* the Bank's foreclosure claims were set off against Steamship's jury award.

■ [¶ 16] The 2004 Agreement also states that the contingent fee would be calculated as "35% to ... Lilley ... for settlement or trial (not to include appeal) of gross recovery." (Emphasis omitted.) Contract language is only "ambiguous when it is reasonably susceptible [to] different interpretations." *Am. Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989, 993 (quotation marks omitted). When a contract is unambiguous, we review it de novo and interpret it according to the "plain meaning of the language used." *See id.* (quotation marks omitted). Contrary to Lilley's contentions, this provision is unambiguous and the plain meaning

of its language directs that the contingent fee be based on the gross, or total, amount *recovered* by Lilley and held in trust for the benefit of its client. In this case, the gross amount recovered by Lilley is the amount in the interpleader fund.

[¶ 17] According to the 2004 Agreement, Lilley may only base its contingent fee on the total amount that was recovered, actually collected, and received in trust. Nothing in the 2004 Agreement overcomes the presumption that an attorney's contingent fee is based on the amount received for the client after any set offs. *See* Restatement (Third) of The Law Governing Lawyers § 35(2) & cmt. d; M. Bar R. 8(e)(4). Therefore, Lilley's 35% contingent fee should have been based upon the amount in the interpleader fund.[5]

The entry is:

Judgment vacated as to the basis for calculating Lilley's contingent fee. In all other respects, the judgment is affirmed. Remanded to the Superior Court for recalculation of Lilley's contingent fee consistent with this opinion.

JABAR, J., dissenting.

[¶ 18] I respectfully dissent from the Court's conclusion that Lilley's 35% contingent fee should be based upon the amount deposited in the interpleader fund, rather than Steamship's $1,500,000 jury award. The Court's analysis is premised on the fact that Steamship never actually collected the jury award, as only $739,000.38 was deposited into the interpleader fund following a court-ordered set off against the Bank's foreclosure deficiency judgment. The Court acknowledges that the Bank's foreclosure action and Steamship's tort/contract action "were not fully consoli-

---

5. Steamship's counterclaim challenging the perfection of the State's lien is not persuasive and is not discussed further.

dated," and that a request for set off was never adequately pleaded. In my view, Lilley's contingent fee should be calculated based upon the amount of Steamship's jury award.

[¶ 19] As the Court's opinion recounts, Steamship made numerous attempts to consolidate its tort and contract claims with the Bank's foreclosure deficiency action. Steamship filed a motion to dismiss the Bank's action, asserting that the Bank's claims were compulsory counterclaims that should have been raised in the Bank's answer to Steamship's original complaint. This motion was denied. Next, Steamship alleged its tort and contract claims as counterclaims in the Bank's action. Steamship's claims were dismissed with prejudice. Ultimately, the two cases were "consolidated pursuant to M.R. Civ. P. 42(a) for purposes of discovery." In all other respects, the cases proceeded along different tracks.

[¶ 20] Nearly a year and a half after summary judgment was entered in favor of the Bank in the foreclosure action, a jury awarded Steamship $1,500,000 in its action against the Bank. This Court affirmed the judgment on the jury verdict. *S.S. Navigation Co. v. Camden Nat'l Bank,* 2006 ME 11, ¶¶ 7–10, 889 A.2d 1014, 1017–18. Following this decision, Steamship filed a motion to set aside the foreclosure judgment. In its memorandum opposing Steamship's motion, the Bank, for the first time, requested a set off of the foreclosure deficiency judgment against Steamship's jury award. The Bank never actually filed a motion or pleading on the issue. Over Steamship's objection, the trial court granted the Bank's set off request. This Court approved the set off on appeal. *Camden Nat'l Bank v. Dunican et al.,* Mem–07–84 (May 8, 2007).

[¶ 21] The Court now acknowledges that the trial court made two mistakes in the handling of this case. First, according to the Court, "the record strongly suggests that the Bank's foreclosure action and Steamship's tort/contract action should have been consolidated," and that "each side's claims were compulsory counterclaims to the other's primary claims." *Supra* n. 3. It follows, therefore, that Steamship was improperly denied the opportunity to litigate both matters together.

[¶ 22] Second, the trial court granted the Bank's request for a set off. Set off had not been pleaded, as is required by our case law. *See FDIC v. Notis,* 602 A.2d 1164, 1165–66 (Me.1992). Although the Court's opinion describes our decision to affirm the set off as the product of "unusual" circumstances, it seems clear to me that the Court believes that the Bank's set off request should never have been granted.

[¶ 23] To avoid the legal implications of these mistakes, the Court's opinion creates a hypothetical procedural history. Despite conceding that the Bank's foreclosure action and Steamship's tort/contract action "were not fully consolidated," the Court declares that, *"functionally,* the Bank's deficiency judgment and Steamship's jury award were part of a single recovery." *Supra* ¶ 12 (emphasis added). Despite acknowledging that a "request for a set off must ordinarily be adequately pleaded," the Court chooses to "treat the set off *as if* it had been pleaded as a claim or counterclaim in either the foreclosure action or the tort/contract action." *Id.* (emphasis added).

[¶ 24] The Court then builds its analysis on this fictional foundation. Explaining that $739,000.38, not the full $1,500,000 jury award, was deposited into the interpleader fund, the Court concludes that Steamship never recovered the full amount of the jury award. The Court emphasizes the physical location of the money; howev-

er, the only reason that Steamship never collected the total jury award, and that the full $1,500,000 was not deposited into a trust account, was because of the improper court-imposed set off.

[¶ 25] Absent a proper set off, the "recovery" in a contingent fee case should include all cash and credit received by the client. *See* Restatement (Third) of The Law Governing Lawyers § 35 cmt. d (2000) (stating that a client's "recovery" for contingent fee purposes "includes damages, restitution, back pay, similar equitable payments, and amounts received in settlement"); 7A C.J.S. *Attorney & Client* § 402 (2004) (explaining that the "amount actually recovered" by a client is the "amount allowed by the judgment less the amount of any claim, expense, or offset that may *properly* be deducted therefrom" (emphasis added)). Clearly, Steamship benefited financially from the amount of the jury verdict that was applied to pay off the foreclosure deficiency judgment. Even though Steamship never actually received the money, its debt was significantly reduced, and it was in a much better position to pay other creditors.[6]

[¶ 26] I do agree with the Court that Lilley properly established and perfected the attorney lien against the recovery Steamship received from the Bank. Because the set off was improperly granted and because the Bank's foreclosure action and Steamship's tort/contract action were never consolidated, Lilley's contingent fee should be based upon the total $1,500,000 jury award. I would, therefore, affirm the judgment of the Superior Court in all respects.

---

**6.** It is interesting to note that Steamship is not objecting to Lilley receiving a fee based upon the total amount of the jury verdict. Five of the six cases relied upon by the Court involve disputes between clients and their attorneys. *See Underwood v. Rich,* 48 Ga.App. 550, 173 S.E. 224 (1934); *Wooldridge v. Bradbury,* 185 Ky. 587, 215 S.W. 406 (1919); *Maiullo v. Genematas,* 16 Mich.App. 231, 167

N.W.2d 849 (1969); *Kramer v. Fallert,* 628 S.W.2d 671 (Mo.Ct.App.1981); *Levine v. Bayne, Snell & Krause, Ltd.,* 40 S.W.3d 92 (Tex.2001).