MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2014 ME 66
Docket:       Yor-13-404
Argued:       April 9, 2014
Decided:      May 8, 2014

Panel:        ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

THE BANK OF NEW YORK MELLON, N.A.

v.

RE/MAX REALTY ONE

ALEXANDER, J.

[¶1]  Re/Max Realty One appeals from the Superior Court's (York County, *O'Neil, J.*) entry of summary judgment in favor of the Bank of New York Mellon, N.A., on the Bank's breach of contract claim and on Re/Max's claim for contractual indemnification and attorney fees.

[¶2]  Re/Max argues that the court erred in granting summary judgment to the Bank because the unambiguous language of its listing agreement with the Bank obligated the Bank to divide any forfeited earnest money with Re/Max, including money the Bank received pursuant to a mediated agreement.  Re/Max further argues that if the judgment in favor of the Bank is vacated and judgment is entered in its favor, it is entitled to indemnification and attorney fees.

[¶3]  Because, under the unambiguous language of the listing agreement, Re/Max is entitled to half of the forfeited funds the Bank received from the

defaulting buyer, we vacate the judgment and remand the matter to the Superior Court to enter a judgment in Re/Max's favor on the Bank's breach of contract claim and to determine whether Re/Max is contractually entitled to indemnification for costs and attorney fees.

## I. CASE HISTORY

[¶4]  The facts stated below are based upon the summary judgment record and are not in dispute.  *See Dussault v. RRE Coach Lantern Holdings, LLC*, 2014 ME 8, ¶ 2, 86 A.3d 52.

[¶5]  On March 18, 2011, a Bank representative signed a listing agreement with Re/Max granting Re/Max the exclusive right to sell a property located in the town of York for $869,000.  The listing agreement provided that Re/Max, referred to as "the Agency," was to receive a five-percent commission from the sale of the property when title to the property passed to the buyer.  A forfeiture clause in the listing agreement provided that "[i]f any earnest money is forfeited by a Buyer, it shall be distributed one half to Seller, and one half to Agency.  In no event shall the Agency portion exceed the agreed upon commission set forth above."  The listing agreement also included an indemnification clause in which the Bank agreed to "hold [the] Agency harmless from any loss or damage that might result from [the] authorizations provided in the Agreement."

[¶6]  On the same date that the listing agreement was signed, Re/Max located a buyer for the property who signed a purchase-and-sale agreement with the Bank.  The buyer paid $86,900 in earnest money, which Re/Max held in escrow.  The purchase-and-sale agreement states that if the buyer defaults on the agreement, the buyer forfeits any earnest money paid.[1]  It also provides that if any dispute arises relating to the purchase-and-sale agreement, the Bank and buyer are obligated to mediate in accordance with the Maine Residential Real Estate Mediation Rules.

[¶7]  When the buyer later defaulted under the terms of the purchase-and-sale agreement, the buyer and the Bank each requested that Re/Max release the entirety of the escrowed earnest money.  Re/Max refused, as it was required to do under the Maine Real Estate Commission Rules, *see* 6 C.M.R. 02 39 400-3 § 2(10)(C) (2010), and the default clause in the purchase-and-sale agreement, and informed the buyer and the Bank that it would not release the funds until it received either a written agreement between the buyer and the Bank or a court order.

---

[1]  The default clause in the purchase-and-sale agreement between the Bank and the buyer provides:

> 17.  DEFAULT:  In the event of default by the Buyer, Seller may employ all legal and equitable remedies, including without limitation, termination of this agreement and forfeiture by Buyer of the earnest money. . . . Agency acting as escrow agent has the option to require written releases from both parties prior to disbursing the earnest money to either Buyer or Seller.

4

[¶8]  Meanwhile, Re/Max procured a second buyer to purchase the property from the Bank for the full asking price of $869,000.  The sale closed on August 31, 2011.  At that time, Re/Max received a five percent commission, which it divided with the second buyer's agent.

[¶9]  In December 2011, the Bank and the first buyer participated in mediation to resolve the dispute over the earnest money.  Re/Max was asked to participate in the mediation but elected not to.  After mediation, the Bank and the first buyer agreed to divide the earnest money between themselves, with $49,500 going to the Bank and $37,400 to the first buyer.  Re/Max prepared a form in which the Bank and the first buyer agreed to the release of the earnest money. Re/Max sent a check for $37,400 to the first buyer and a check for $24,750 to the Bank.  Re/Max retained the remaining $24,750.

[¶10]  The Bank filed a complaint against Re/Max, alleging a breach of the listing agreement stemming from Re/Max's retention of $24,750 of the earnest money.[2]  Re/Max counterclaimed, asserting a contractual right to indemnification and attorney fees.[3]  The Bank and Re/Max each moved for summary judgment on

---

[2]  The Bank asserted other claims against Re/Max based on Re/Max's retention of the earnest money. However, the court granted summary judgment to Re/Max on those claims and the Bank does not appeal those decisions.

[3]  Re/Max asserted a breach of contract claim against the Bank but does not appeal the grant of summary judgment to the Bank on that claim.

all claims and, utilizing good practice in summary judgment litigation, stipulated the facts in lieu of individual statements of material fact.

[¶11]  In August 2013, the Superior Court granted summary judgment to the Bank on its breach of contract claim in the amount of $24,750.  The court also granted the Bank summary judgment on Re/Max's claim for contractual indemnification and attorney fees.  Re/Max timely appealed.  *See* 14 M.R.S. § 1851 (2013); M.R. App. P. 2(b)(3).

## II.  LEGAL ANALYSIS

[¶12]  We review the grant of a summary judgment de novo, *Bell v. Dawson*, 2013 ME 108, ¶ 15, 82 A.3d 827, and affirm "only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law," *McClare v. Rocha*, 2014 ME 4, ¶ 10, 86 A.3d 22.  The record in this case reveals no outstanding issues of material fact as to the Bank's breach of contract claim, which is dependent on the construction of the listing agreement.

[¶13]  The listing agreement's provisions are unambiguous.  *See Coastal Ventures v. Alsham Plaza, LLC*, 2010 ME 63, ¶ 26, 1 A.3d 416 ("[A] contractual provision is considered ambiguous if it is reasonably possible to give that provision at least two different meanings." (alteration in original)).  If a contract is unambiguous, "its construction is . . . a question of law," *Richardson v. Winthrop Sch. Dep't*, 2009 ME 109, ¶ 9, 983 A.2d 400, and we will "interpret it according to

6

the plain meaning of the language used," *Camden Nat'l Bank v. S.S. Navigation Co.*, 2010 ME 29, ¶ 16, 991 A.2d 800, "without resort to extrinsic evidence," *Am. Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989.

A.    Breach of Contract

[¶14]   The listing agreement provides that "[i]f any earnest money is forfeited by a Buyer, it shall be distributed one half to Seller, and one half to Agency.  In no event shall the Agency portion exceed the agreed upon commission set forth above," i.e., five percent of the purchase price.  When the first buyer defaulted under the terms of the purchase-and-sale agreement, the Bank became entitled to the earnest money as liquidated damages, and Re/Max's interest in the funds, via the listing agreement, accrued.  *See Gile v. Albert*, 2008 ME 58, ¶ 8, 943 A.2d 599 (stating that in a breach of contract case, the cause of action accrues when the contract is breached).

[¶15]   The Bank asserts that no forfeiture of the earnest money occurred because the Bank and the first buyer reached an agreement regarding distribution of the funds held by Re/Max.  The term forfeiture, as used in the listing agreement, is in no way ambiguous.  Black's Law Dictionary defines forfeiture as "[t]he divestiture of property without compensation" or "[t]he loss of a right, privilege, or property because of a crime, breach of obligation, or neglect of duty."  Black's Law Dictionary 722 (9th ed. 2009).  The money at issue here falls within either

definition. The first buyer breached his obligations under the purchase-and-sale agreement, and as a result of that breach lost $49,500.

[¶16] At the time the Bank and the first buyer negotiated the mediated agreement, the Bank had no claim for actual damages or specific performance against the buyer because the Bank had already conveyed the property to another buyer for the same contract price. Therefore, the Bank's sole claim to the earnest money was based on the forfeiture clause in the purchase-and-sale agreement. That the Bank later engaged in mediation with the buyer regarding the amount to be forfeited does not change the character of the funds.

[¶17] The five-percent limitation on the portion of forfeited funds that Re/Max is entitled to receive appears in the forfeiture clause in the listing agreement. That clause limits only the amount of forfeited funds that Re/Max may receive, not the total compensation Re/Max may collect under the listing agreement. Re/Max's right to forfeited funds is separate from, and in addition to, any commission received from the separate sale of the property. To read the forfeiture provision any other way would result in a windfall to the Bank and deprive Re/Max of compensation for procuring the first purchase-and-sale agreement.

[¶18] The Bank's argument that Re/Max is not entitled to any portion of the forfeited earnest money because the Bank received the money after the listing

agreement expired is unpersuasive. Re/Max's interest in the earnest money matured when the Bank's did, that is, when the first buyer defaulted under the purchase-and-sale agreement. *See Gile,* 2008 ME 58, ¶ 8, 943 A.2d 599 (stating that in a breach of contract case, the cause of action accrues when the contract is breached).

[¶19] Furthermore, the listing agreement was still in force when the Bank and the buyer reached the mediated agreement. The listing agreement provided that it would "expire on November 1, 2011, unless if prior to such expiration date the Seller places the property under any type of contract, in which case this agreement will expire upon closing, transfer of title and/or termination/expiration of such contract." The contract between the Bank and the first buyer was not terminated until the issue of the earnest money was settled; therefore, the listing agreement was still in force until "the termination/expiration of such contract."

[¶20] Finally, contrary to the Bank's contentions, Re/Max did not waive its interest in the forfeited funds. A waiver is a "voluntary or intentional relinquishment of a known right and may be inferred from the acts of the waiving party." *Blue Star Corp. v. CKF Props., LLC*, 2009 ME 101, ¶ 26, 980 A.2d 1270. None of Re/Max's actions suggest that it intended to relinquish its interest in the escrowed earnest money deposit.

[¶21]  Re/Max, not the Bank, is entitled to summary judgment on the Bank's breach of contract claim.

B.    Contractual Indemnification and Attorney Fees

[¶22]  Re/Max also seeks to enforce its contractual right to indemnification and attorney fees.   Because this requires fact-finding as to whether Re/Max suffered loss or damage resulting from the authorizations stated in the listing agreement, *see Lee v. Scotia Prince Cruises Ltd.*, 2003 ME 78, ¶ 21, 828 A.2d 210, the matter must be remanded to the Superior Court for it to decide in the first instance whether Re/Max is entitled to indemnification and attorney fees under the listing agreement, and, if so, the amount Re/Max is entitled to.

The entry is:

> Judgment vacated.   Remanded to the Superior Court for entry of a judgment in favor of Re/Max for $24,750, and for further proceedings consistent with this opinion.

**On the briefs:**

Elizabeth G. Stouder, Esq., and Joseph L. Cahoon, Jr., Esq., Richardson, Whitman, Large & Badger, Portland, for appellant Re/Max Realty One

Matthew W. Howell, Esq., Clark & Howell, LLC, York, for appellee Bank of New York Mellon, N.A.

**At oral argument:**

Elizabeth G. Stouder, Esq., for appellant Re/Max Realty One

Matthew W. Howell, Esq., for appellee Bank of New York Mellon, N.A.

York County Superior Court docket number CV-2012-59
FOR CLERK REFERENCE ONLY