MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:       2014 ME 157
Docket:         Ken-14-201
Submitted
 On Briefs:     December 1, 2014
Decided:        December 31, 2014

Panel:          SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

PHILLIP M. BOWLER SR.

v.

STATE OF MAINE

MEAD, J.

[¶1]  In 2013, pursuant to the Freedom of Access Act (FOAA), 1 M.R.S. §§ 400-414 (2014), Phillip M. Bowler Sr. requested, and was subsequently denied, access to an investigative file held by the Attorney General concerning a death that occurred in 1953.  Bowler appealed the denial of his request to the Superior Court pursuant to 1 M.R.S. § 409.  The court (Kennebec County, *Murphy, J.*) entered a judgment denying the appeal, and Bowler now appeals from that judgment.  He contends that (1) the court erred in finding that the file was made confidential by statute; (2) even if the file was confidential, the Attorney General waived that status by releasing a copy of the file to the decedent's family; and (3) releasing the file to a family member but not to him violated his constitutional right to equal protection.  We affirm the judgment.

2

## I. BACKGROUND

[¶2] The facts are not disputed. In July 1953, Sally Moran disappeared after going for a walk on Monhegan Island. Her body was recovered from the ocean three weeks later. No one was charged with a crime, and the case is not active. In September 2013, Bowler, in furtherance of a book he wishes to write about the case, requested a copy of the Attorney General's investigative file pursuant to the FOAA. The Deputy Attorney General met with Bowler and denied him access to the file on the ground that it was designated confidential by statute.

[¶3] Bowler appealed to the Superior Court pursuant to 1 M.R.S. § 409(1) and M.R. Civ. P. 80(C).[1] Following a hearing, the court took the matter under advisement, and later ordered further briefing on the issue of whether denying Bowler access to the file violated his right to equal protection. After the parties filed supplemental briefs, the court issued a written order denying Bowler's appeal. Bowler filed a motion for reconsideration that was also denied. This appeal followed.

---

[1] Although styled a Rule 80(C) appeal, it was more properly brought pursuant to Rule 80(B). *See Blethen Me. Newspapers, Inc. v. State*, 2005 ME 56, ¶¶ 4, 6, 871 A.2d 523.

## II.  DISCUSSION

A.      Statutory Confidentiality

[¶4]  We construe the FOAA de novo as a question of law.  *Preti Flaherty Beliveau & Pachios LLP v. State Tax Assessor*, 2014 ME 6, ¶ 10, 86 A.3d 30.  As the party denying an FOAA request, the State bears the burden of "establishing that there is just and proper cause for the denial."  *Id.*  The State asserts that it had cause to deny Bowler's request for the Moran file because a statute makes it confidential.

[¶5]  Prior to 1995, the file was unquestionably confidential.  A statute then in effect provided: "Notwithstanding any other provision of law, all complaints and investigative records of the Department of the Attorney General shall be and are declared to be confidential."  5 M.R.S.A. § 200-D (1994).  Section 200-D was repealed in 1995 as part of a larger piece of legislation bringing the Attorney General's investigative records within the purview of what is now the Intelligence and Investigative Record Information Act (IIRIA), 16 M.R.S. §§ 801-809 (2014).  P.L. 1993, ch. 719, § 1 (effective July 1, 1995).[2]

---

[2]  In addition to repealing 5 M.R.S.A. § 200-D, chapter 719 enacted a new version of 16 M.R.S. § 614(1) (2012), governing the dissemination of investigative information by law enforcement agencies.  P.L. 1993, ch. 719, § 7 (effective July 1, 1995).  Section 614 was later repealed when the Intelligence and Investigative Record Information Act was enacted.  P.L. 2013, ch. 267, §§ A-1, A-3 (effective Oct. 9, 2013) (section A-3 codified at 16 M.R.S. §§ 801-809 (2014)); P.L. 2013, ch. 588, § A-20 (effective Apr. 30, 2014).

4

[¶6]  Relevant here, in the legislation repealing section 200-D, the Legislature included an unallocated provision[3] that the trial court found to be dispositive of the question of Bowler's entitlement to the Moran file:

> Reports and records that were created prior to the effective date of this Act [July 1, 1995] that were confidential pursuant to the Maine Revised Statutes, Title 5, section 200-D at the time of their creation continue to be confidential after the effective date of this Act as provided in former Title 5, section 200-D.

P.L. 1993, ch. 719, § 11 (effective July 1, 1995) (hereinafter section 11).  The Moran file predates section 11's effective date by forty-two years.  Accordingly, if the file was "confidential pursuant to . . . section 200-D at the time of [its] creation," then it continues to hold the blanket confidentiality status that section 200-D provided prior to that section's repeal.  *See id.*

[¶7]  In *Dunn & Theobald, Inc. v. Cohen*, we addressed the issue of whether section 200-D applied to investigative records that were created before it took effect on April 1, 1976, and concluded that it did.  402 A.2d 603, 603-05 (Me. 1979); *see* P.L. 1975, ch. 715, § 1 (effective Apr. 1, 1976).  Concerning the language of section 200-D, we said that

> [i]n our view, that language could hardly be more clear.  The lawmaking body declared the confidential status of all "investigative records of the Department of the Attorney General."  Those particular

---

[3]  The *Maine Legislative Drafting Manual*, published by the Office of the Revisor of Statutes, states that "[a]n unallocated provision is law that is published in *Laws of the State of Maine* but is not included in the Maine Revised Statutes."  Part II, ch. 1, § 1(A) at 13 (1st ed. October 1990, revised through August 2009).

records of the Attorney General are comprehensively classified to be confidential. The language itself does not suggest or even permit of an interpretation encompassing some of the investigative records then or thereafter in the custody or possession of the Attorney General, but not others.

*Id.* at 604 (footnote omitted). Examining the purposes of section 200-D, we concluded that

[they] would be achieved only by applying section 200-D to *all* investigative records, including those that were in the custody or possession of the Attorney General on April 1, 1976.

In short, section 200-D did not speak as of its effective date in terms of only subsequent Attorney General investigations. By its language it was concerned with any and all of the Attorney General's investigative records, whenever created, and without limitation it denied public access to all such records.

*Id.* at 605.

[¶8] Applying the *Dunn* holding to the circumstances of the pending matter results in an unmistakable conclusion that the Legislature made the Moran file, created in 1953, retroactively subject to the protection of section 200-D when that statute took effect in 1976. Accordingly, the file was "confidential pursuant to . . . section 200-D at the time of [its] creation," and remains confidential pursuant to the provisions of that former statute. P.L. 1993, ch. 719, § 11. "The Legislature is presumed to be aware of the state of the law and decisions of this Court when it passes an act." *Stockly v. Doil*, 2005 ME 47, ¶ 14, 870 A.2d 1208 (quotation marks omitted). In this case that presumption includes an awareness of our

unequivocal declaration, sixteen years before section 11 was enacted, that section 200-D "was concerned with *any and all* of the Attorney General's investigative records, *whenever created*." *Dunn*, 402 A.2d at 605 (emphasis added).

[¶9]   Bowler contends that the phrase "at the time of their creation" in section 11 means that only investigative files physically created after section 200-D was enacted in 1976 and before it was repealed in 1995 remain subject to its provisions. Thus, according to Bowler, the Legislature intended that section 11 create a three-tier "donut hole" classification system: pre-1976 Attorney General investigative files subject to disclosure; 1976-1995 files not subject to disclosure pursuant to former section 200-D; and post-1995 files again subject to disclosure pursuant to what is now the IIRIA.

[¶10]   It is not disputed that following *Dunn* and prior to the repeal of section 200-D there was a one-tier system: all Attorney General investigative files were confidential. Knowing that we had applied section 200-D retroactively, if the Legislature intended to create a new category of files that had previously been confidential but were not confidential any longer, it would have made that change explicit. We conclude that section 11 preserved the status quo for pre-1976 files, and that the Legislature did not intend to alter the confidential status they had enjoyed for at least nineteen years following the enactment of section 200-D. *See Merrill v. Me. Pub. Emps. Ret. Sys.*, 2014 ME 100, ¶ 13, 98 A.3d 211 (stating

that in construing a statute the Law Court "look[s] first to the statute's plain language to give effect to the Legislature's intent, considering the language in the context of the whole statutory scheme to avoid absurd, illogical, or inconsistent results" (quotation marks omitted)).

[¶11]  To the extent that the scope of section 11 is ambiguous, the statement of fact accompanying an adopted amendment to a bill that included what became section 11 supports our conclusion that section 11 preserved the confidentiality of pre-1976 investigative files.  *See Samsara Mem'l Trust v. Kelly, Remmel & Zimmerman*, 2014 ME 107, ¶ 42, 102 A.3d 757 (stating that the Law Court "will consider legislative history when the statute's language is ambiguous").  It recites that

> [t]he change in treatment of records of the Department of the Attorney General [made by repealing section 200-D] is made *prospective* with respect to . . . investigative records *formerly covered by* . . . section 200-D.  Under this amendment, records created prior to the effective date of the bill [July 1, 1995] remain subject to the confidentiality provisions of former Title 5, section 200-D, and Attorney General records created after the effective date of the bill are subject to [the forerunner of the IIRIA].

Comm. Amend. A to L.D. 903, No. H-953 (116th Legis. 1993) (emphasis added).

This statement of legislative intent makes clear that because the Moran file was "formerly covered by" section 200-D, and because the change from all Attorney

8

General investigative records being classified as confidential was "prospective," the file remained confidential following the enactment of section 11.

[¶12]  Bowler also contends that even if section 11 initially continued the confidentiality of pre-1976 investigative files, it does not control the result here because it was a "temporary, unallocated provision" that the Legislature "could not have intended . . . to remain in effect."  Consequently, he argues, section 11 was superseded by implication no later than 2013 when the IIRIA was enacted. Contrary to Bowler's argument, an unallocated provision of law is a law nonetheless, and he points to nothing explicitly repealing section 11.  For decades, absent "an express legislative statement," we have disfavored repeal by implication and apply a "strong presumption" against it.  *Fleet Nat'l Bank v. Liberty*, 2004 ME 36, ¶¶ 9, 11, 845 A.2d 1183; *see State v. London*, 156 Me. 123, 126, 162 A.2d 150 (1960) ("It is well settled that a repeal by implication is not favored and will not be upheld in doubtful cases.").

[¶13]  The long-standing test is "whether a subsequent legislative act is so directly and positively repugnant to the former act, that the two cannot consistently stand together." *London*, 156 Me. at 127 (quotation marks omitted).  Here, section 11 and the IIRIA can be read in harmony—the former governs the release of investigative records created before July 1, 1995, and the latter governs records created after that date.  Accordingly, the IIRIA did not repeal section 11 by

implication. *See Fleet Nat'l Bank*, 2004 ME 36, ¶ 9, 845 A.2d 1183 ("Because it is possible to read these statutes in harmony, a finding of repeal by implication is inappropriate."); *London*, 156 Me. at 128 ("The [C]ourt will if possible give effect to both statutes and will not presume that a repeal was intended.").

[¶14]  Bowler's assertion that section 11 was merely temporary is refuted by an unallocated provision enacted in 2003, eight years after section 11 was enacted. In a private and special law concerning another criminal case, the Legislature declared:

> *Notwithstanding Public Law 1993, chapter 719, section 11*, the intelligence and investigative information contained in the reports and records of the Department of the Attorney General prepared by or at the request of the department before July 1, 1995 [the effective date of section 200-D's repeal and section 11's enactment] relating to the unlawful homicide of [the victim] . . . is governed by [the forerunner of the IIRIA].

P. & S.L. 2003, ch. 18 (emphasis added).  The special law makes an exception to section 11 that would obviously be unnecessary if it was merely a temporary provision that had expired or been superseded.

[¶15]   As to Bowler's final argument that none of the exceptions to disclosure set out in the IIRIA apply to his request,[4] the State conceded at the hearing that only section 11 prevents the release of the Moran file.  However, pursuant to the IIRIA an investigative record is confidential if public release would

---

4  *See* 16 M.R.S. § 804 (2014).

"[d]isclose information designated confidential by statute." 16 M.R.S. § 804(9).
The trial court correctly concluded that section 11 designated the Moran file as
confidential; accordingly, the State properly denied Bowler access to it.

B.    Waiver

[¶16]  At the hearing, the State acknowledged that it had given a copy of the
file to Sally Moran's grandniece, Martha Wolfe, at her request.  Bowler argues that
even if section 11 made the file confidential, that confidentiality was waived when
the State gave it to Wolfe.  "A waiver is a voluntary or intentional relinquishment
of a known right and may be inferred from the acts of the waiving party."  *Bank of
N.Y. Mellon, N.A. v. Re/Max Realty One*, 2014 ME 66, ¶ 20, 91 A.3d 1059
(quotation marks omitted).  Whether undisputed facts "are sufficient to constitute
legal waiver is a question of law we review de novo."  *In re Estate of Barrows*,
2008 ME 62, ¶ 3, 945 A.2d 1217.

[¶17]  The State advances two arguments in support of its position that the
statutory confidentiality afforded the Moran file by section 11 has not been waived.
The first is that the Attorney General was authorized to disclose the information in
the file to Wolfe because a Moran family member is not in the same category as
the public at large.  That position is supported by the IIRIA, which became

effective shortly before the hearing.[5]  The FOAA and the IIRIA each protect from disclosure records "designated confidential by statute."  1 M.R.S. § 402(3)(A); 16 M.R.S. § 804(9).  Because the Moran file is designated confidential by section 11, the IIRIA declares that "[e]xcept as provided . . . [the] record . . . is confidential and may not be disseminated by a Maine criminal justice agency to any person or public or private entity."  16 M.R.S. § 804.  Without more, that provision would prevent both Bowler and Wolfe from accessing the file.

> [¶18]  There is an exception, however, which provides that the IIRIA
>
> does not preclude dissemination of intelligence and investigative record information confidential under section 804 by a Maine criminal justice agency to:
> . . . .
>
> [a] crime victim or that victim's agent or attorney.  As used in this subsection, "agent" means . . . an immediate family member . . . if due to death . . . the victim cannot realistically act on the victim's own behalf.

16 M.R.S. § 806(2).

[¶19]  The applicability of the exception in this case turns on whether Wolfe is an "immediate family member."  The State advised the court at the hearing that Wolfe was "[o]ne of the few surviving family members."  That statement finds support in a letter that Wolfe wrote to the court in opposition to Bowler's request, in which she said that she wrote "on behalf of myself and my eighty-nine year old

---

[5]  P.L. 2013, ch. 267, § A-3 (effective Oct. 9, 2013).

mother," who would be Moran's niece. In his notice of appeal to the Superior Court, Bowler confirmed that "[t]he major persons in this case have since been deceased," including Sally Moran's ex-husband and son. The term "immediate family member" is not defined in the IIRIA. Without attempting a comprehensive definition here, we are satisfied that the term includes the niece and grandniece of the deceased when it is likely that there are no closer surviving relatives. Accordingly, the section 806(2) exception applies and the Attorney General was authorized to give the file to Wolfe without waiving confidentiality as to the public at large.

[¶20]    The State's second contention is that if, *arguendo*, the Attorney General erred in giving the file to Wolfe, that error could not globally waive the statutory confidentiality mandated by the Legislature. We agree. In a circumstance not applicable here, the IIRIA provides that if a person disseminates confidential material knowing that the action is in violation of the Act it is a crime, 16 M.R.S. § 809, but nothing in the statute indicates that improper dissemination results in a complete loss of confidentiality. As the State acknowledges, the Attorney General does not have the power to waive statutory confidentiality if the Legislature has not. We conclude that giving the file to Wolfe did not constitute a "voluntary or intentional relinquishment" of confidentiality by the entity that

created it—the Legislature. *See Bank of N.Y. Mellon, N.A.*, 2014 ME 66, ¶ 20, 91 A.3d 1059 (quotation marks omitted).

C. Equal Protection

[¶21] Bowler finally contends that providing the Moran file to Wolfe but not to him constitutes an equal protection violation. *See* U.S. Const. amend. XIV, § 1; Me. Const. art. I, § 6-A. We review equal protection challenges de novo. *State v. Carr*, 2012 ME 136, ¶ 11, 58 A.3d 1102.

[¶22] In general,

in an equal protection challenge where . . . the challenging party is not a member of a suspect class, a party challenging a statute must show (1) that similarly situated persons are not treated equally under the law, and (2) that the statute is not rationally related to a legitimate state interest. A statute subject to rational basis review on equal protection grounds is unconstitutional only if the discrimination it permits is arbitrary, unreasonable or irrational.

*In re D.P.*, 2013 ME 40, ¶ 16, 65 A.3d 1216 (alteration, citation and quotation marks omitted).

[¶23] Here, however, Bowler, citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), mounts a "class of one" equal protection challenge, contending that he "has been intentionally treated differently from others similarly situated." The First Circuit Court of Appeals has said that

[i]n a class of one equal protection claim, proof of a similarly situated, but differently treated, comparator is essential. In particular, plaintiffs

must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.

*Snyder v. Gaudet*, 756 F.3d 30, 34 (1st Cir. 2014) (citation and quotation marks omitted).

[¶24]  Bowler's attempt to compare his treatment to Wolfe's fails because they are not similarly situated to "an extremely high degree," *id.*, in that Wolfe is a member of Moran's family and Bowler is not.  In her letter to the trial court, Wolfe noted that that was the key distinction made by the State: "[The Deputy Attorney General] questioned me carefully about my interest in the file and . . . . agreed to grant access to the file on the grounds that I am a member of the dead woman's family.  He made it clear that he would not release the file to anyone other than a family member."  The IIRIA recognizes the same distinction by allowing the dissemination of otherwise confidential material to "an immediate family member" if a victim is unable to act on her own behalf.  16 M.R.S. § 806(2).  Because Bowler has not shown that he was treated differently from any other member of the public that was not related to Sally Moran, his equal protection challenge fails.

The entry is:

Judgment affirmed.

**On the briefs:**

Philip M. Bowler Sr., appellant pro se

Janet T. Mills, Attorney General, and Phyllis Gardiner, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Office of the Attorney General

Kennebec County Superior Court docket number AP-13-40
FOR CLERK REFERENCE ONLY